# EXHIBIT E

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2014121500680002001E94D9

| **RECORDING AND ENDORSEMENT COVER PAGE** | **PAGE 1 OF 13** |
|---|---|

**Document ID:** 2014121500680002  **Document Date:** 08-01-2013  **Preparation Date:** 12-15-2014
Document Type: AGREEMENT
Document Page Count: 11

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| SECURITY CONNECTIONS INC<br>240 TECHNOLOGY DRIVE<br>IDAHO FALLS, ID 83401<br>SUPPORT@SIMPLIFILE.COM | SECURITY CONNECTIONS INC<br>240 TECHNOLOGY DR<br>IDAHO FALLS, ID 83401<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 12147 | 5 | Entire Lot | 109-41 156th STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

**CRFN:** 2010000362079

### PARTIES

| **PARTY 1:** | **PARTY 2:** |
|---|---|
| MARIE LAMOUR<br>109-41 156TH STREET<br>JAMAICA, NY 11433 | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC<br>1901 VOORHEES STREET, SUITE C<br>DANVILLE, IL 61834 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| **Mortgage :** | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 298,564.73 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 92.00 | | | |
| Affidavit Fee: | $ | 8.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed      12-23-2014 11:54
City Register File No.(CRFN):
**2014000421736**

*Annette M Hill*
*City Register Official Signature*


**RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)**      **PAGE 2 OF 13**
**Document ID: 2014121500680002**      Document Date: 08-01-2013      Preparation Date: 12-15-2014
Document Type: AGREEMENT

**PARTIES**
**PARTY 2:**
OCWEN LOAN SERVICING LLC
3451 HAMMOND AVE
WATERLOO, IA 50702

Investor Loan # ███████
Custodian ID: ███
This document was prepared by Ocwen Loan Servicing, LLC

**After Recording Return To:**
Ocwen Loan Servicing, LLC
Attention: ~~Loss Mitigation~~ Alison Cameron
~~3700 J Street SW~~ 3451 Hammond Ave
~~Suite 555~~ Waterloo, Ia 50702
~~Cedar Rapids, IA 52404~~

Record and                    [Space Above This Line For Recording Data]
Unpaid prior balance 298564.73  new balance 298,564.73

# HOME AFFORDABLE MODIFICATION AGREEMENT no new $

8/1/13

Borrower ("I"): MARIE LAMOUR
Lender/Servicer or Agent for Lender/Servicer ("Lender"): Ocwen Loan Servicing, LLC
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): September 17, 2010 original UPB: US$325,215.0
Loan Number: ███████
Property Address ("Property"): 109-41 156TH STREET JAMAICA NY 11433

If my representations in Section 1 continue to be true in all material respects, then this Modification
Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the
Property, and (2) the Note secured by the Mortgage. The Note is secured by a Mortgage, Deed of Trust, or
Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, and if applicable,
recorded on October 29, 2010 with Instrument Number*in Book and/or Page number of the real property
records of QUEENS County, NY. Said Security Instrument covers the real and personal property
described in such Security Instrument (the "Property") located at 109-41 156TH STREET JAMAICA NY
11433, which real property is more particularly described as follows. "MERS" is Mortgage Electronic
Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for
Lender/Servicer or Agent for Lender/Servicer. MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of 1901 E Voorhees Street, Suite C, Danville, IL
61834 or P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. The Mortgage and Note together, as
they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used
in this Agreement and not defined have the meaning given to them in Loan Documents.

*2010000362079

**(Legal Description – Attached as Exhibit if Recording Agreement)**

Parcel: 12147 0005

1-2 Family dwelling

/

## MORTGAGE SCHEDULE

A certain mortgage bearing the date of 9/17/10 in the principal amount of $325,615.00 was made by Marie Lamour and Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for First Residential Mortgage Services Corporation, beneficiary of the security instrument, its successors and assigns as original mortgagee recorded on 10/29/10 in Instrument 2010000362079 at which time mortgage tax in the amount of $6644.80 was duly paid.

--This mortgage is being assigned from Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for First Residential Mortgage Services Corporation, beneficiary of the security instrument, its successors and assigns to Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for Ocwen Loan Servicing, LLC, beneficiary of the security instrument, its successors and assigns dated 10/29/14 and recorded herewith.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. I live in the Property as my principal residence, and the Property has not been condemned;

   C. There has been no change in the ownership of the Property since I signed the Loan Documents;

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for a modification of the Loan Documents);

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct; and,

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and,

   G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

   H. If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. TIME IS OF THE ESSENCE under this Agreement;

   B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on September 01, 2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on September 01, 2013.

   A. The new Maturity Date will be: August 01, 2043.

   B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Lender but not

previously credited to my Loan. The new Principal balance of my Note will be $298,564.73 (the "New Principal Balance").

C. Interest at the rate of 3.750% will begin to accrue on the New Principal Balance as of August 01, 2013 and the first new monthly payment on the New Principal Balance will be due on September 01, 2013. My payment schedule for the modified Loan is as follows:

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Payment Ends on |
|---|---|---|---|---|---|---|
| 3.750% | August 01, 2013 | $1,382.69 | $489.59, may adjust periodically | $1,872.28, may adjust periodically | September 01, 2013 | August 01, 2043 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step interest rate or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.   **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower or co-borrower are divorced and the property has been transferred to one spouse in the divorce decree which was recorded, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents; (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. **Funds for Escrow Items.** I will pay to the Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments the Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lenders may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its right under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimate of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to

me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

F. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer or assumption of the Loan, including this Agreement to a transferee of my property permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, any provision in the Note, as amended for the assessment of a penalty for full or partial prepayment of the Note is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in the first lien position and/or is fully enforceable upon modification and that if, under any circumstances and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), then the terms of this Agreement will not become effective on Modification Effective Date and the Agreement will be null and void.

L. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I

understand that either a corrected Agreement or letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

M. Mortgage Electronic Registration Systems, Inc. (MERS) is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679 MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the Borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of lender including, but not limited to, releasing and canceling the mortgage Loan.

N. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosures of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v)any HUD certified housing counselor.

O. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this section 4.N. shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

P. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

9/4/13 *Marie Lamour*

Date

MARIE LAMOUR

_____     _____
Date

_____     _____
Date

_____     _____
Date

## BORROWER ACKNOWLEDGMENT

State of *New York*

County of *New York*

On this 4th day of *September 2013* before me, the undersigned, a Notary Public in and for said county and state, personally appeared MARIE LAMOUR, personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

Notary Public                    *Yuderka Vargas*
My Commission Expires: *June 1, 2015*

**YUDERKA VARGAS**
Notary Public, State of New York
No. 31-4897353
Qualified in New York County
Commission Expires June 01, 2015

*See attached*

# UNIFORM FORM CERTIFICATE OF ACKNOWLEDGMENT

STATE OF NEW YORK  )

                                        ss:

COUNTY OF  New York

On the _____5th_____ day of _September_ in the year _2013_, before me, the undersigned, personally appeared _MARIE  LAMOUR_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public  Yuderka Vargas

**YUDERKA VARGAS**
Notary Public, State of New York
No. 31-4897353
Qualified in New York County
Commission Expires June 01, 2015

_l_

Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for Ocwen Loan Servicing, LLC, beneficiary of the security instrument, its successors and assigns.

Dated: _____ OCT 3 0 2014 _____

By: _Michelle Treloar_
      Michelle Treloar
      Assistant Secretary

LENDER ACKNOWLEDGMENT

State of Iowa
County of Black Hawk

On this _30_ day of _October_, _2014_, before me, the undersigned, a Notary Public in and for said county and state, personally appeared Michelle Treloar, personally known to me or identified to my satisfaction to be the person who executed the within instrument as Assistant Secretary of Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for Ocwen Loan Servicing, LLC, beneficiary of the security instrument, its successors and assigns and they duly acknowledged that said instrument is the act and deed of said entity, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

_Rachel Moore_
Notary Public    **Rachel Moore**
My Commission Expires: _9.23.2016_

RACHEL MOORE
COMMISSION NO.764817
MY COMMISSION EXPIRES
SEPTEMBER 23, 2016

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Fourth Ward of the Borough of Queens, County of Queens, City and State of New York, which upon a certain map entitled, "Map of Phraner Farm, belonging to Brown, Norris and Hardenbrook", and filed in the Office of the Clerk of the County of Queens, is known as and by the Lot Number 17 in Block Number 10 on map of said property, being 25 feet front and rear by 100 feet deep, bounded and described as follows:

BEGINNING at a point on the easterly side of 156th Street (Brown Street), distant 175.26 feet from the corner formed by the intersection of the easterly side of 156th Street and the northerly side of Brinkerhoff Avenue (State Street);

RUNNING THENCE northerly along the easterly side of 156th Street, 25.04 feet (25 feet tax map);

THENCE easterly parallel to the northerly side of Brinkerhoff Avenue, 100.10 feet;

THENCE southerly parallel to the easterly side of 156th Street, 25.04 feet (25 feet tax map);

THENCE westerly parallel to the northerly side of Brinkerhoff Avenue, 100.10 feet to the easterly side of 156th Street at the point or place of BEGINNING.

SAID PREMISES being known as: 109-41 156TH STREET, JAMAICA, NEW YORK 11433

SECTION: 52        BLOCK: 12147        LOT: 5



2014121500680002001S5A58

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID:** 2014121500680002     Document Date: 08-01-2013     Preparation Date: 12-15-2014
Document Type: AGREEMENT

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT     1

## AFFIDAVIT UNDER SECTION 255 OF THE NEW YORK STATE LAW
## (MODIFICATION AGREEMENT)

Loan # ██████

State of Iowa}        }SS
County of Black Hawk}

I, ALISON CAMERON, Authorized Signer, being duly sworn, deposes
and says:

1. That he/she is the agent for the owner and holder of the hereinafter described mortgage, and is familiar with the facts set forth herein.

2. A certain mortgage bearing the date of 9/17/10 in the principal amount of $325,615.00 was made by Marie Lamour and Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for First Residential Mortgage Services Corporation, beneficiary of the security instrument, its successors and assigns as original mortgage recorded on 10/29/10 in Instrument 2010000362079 at which time mortgage tax in the amount of $6644.80 was duly paid.

--This mortgage is being assigned from Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for First Residential Mortgage Services Corporation, beneficiary of the security instrument, its successors and assigns to Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for Ocwen Loan Servicing, LLC, beneficiary of the security instrument, its successors and assigns dated 10/29/14 and recorded herewith.

Balance Remaining: $298,564.73

3. The instrument offered for recording herewith is a Modification made between Marie Lamour and Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for Ocwen Loan Servicing, LLC, beneficiary of the security instrument, its successors and assigns Effective 8/1/13

And to be recorded in the Queens county clerk's office

4. The instrument offered for recording modifies and does not create or secure any new or further lien, indebtedness or obligation other than the principal indebtedness or obligation secured by or which under contingency may be secured by the recorded Mortgage hereinabove first described with the exception of the following amount:

       a) Unpaid principal balance:     $298,564.73
       b) New unpaid principal balance: $298,564.73
       c) B minus A equals:         $0.00
       d) Additional obligation secured by mortgage as modified $0.00
       e) Total amount of which taxes are to be paid on $0.00

Additional mortgage recording tax of $0.00 is therefore being paid on this Modification on the sum set forth in 4c.

That Exemption from further tax is CLAIMED under Section 255 of the Tax Law.

Dated: OCT 3 1 2014

_Alison Cameron_
Alison Cameron-Authorized Signer

Sworn before me to this _31st_ day of _October_, _2014_

_Rachel Moore_
Notary Public: RACHEL MOORE
My Commission Expires: _9-23-2016_

RACHEL MOORE
COMMISSION NO.784817
MY COMMISSION EXPIRES
SEPTEMBER 23, 2016

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2018062100033001001EB943

## RECORDING AND ENDORSEMENT COVER PAGE PAGE 1 OF 16

| | | |
|---|---|---|
| Document ID: **2018062100033001** | Document Date: 05-20-2018 | Preparation Date: 06-21-2018 |

Document Type: MORTGAGE AND CONSOLIDATION
Document Page Count: 14

| PRESENTER: | RETURN TO: |
|---|---|
| FIRST AMERICAN MORTGAGE SOLUTIONS- MOD SEGMENT<br>3 FIRST AMERICAN WAY<br>SANTA ANA, CA 92707<br>SUPPORT@SIMPLIFILE.COM | FIRST AMERICAN TITLE INS<br>3 FIRST AMERICAN WAY<br>SANTA ANA, CA 92707<br>SUPPORT@SIMPLIFILE.COM |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 12147 | 5 | Entire Lot | 109-41 156TH STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

## CROSS REFERENCE DATA

**CRFN:** 2010000362079
☒ Additional Cross References on Continuation Page

## PARTIES

| MORTGAGOR: | MORTGAGEE: |
|---|---|
| MARIE LAMOUR<br>109-41 156TH STREET<br>JAMAICA, NY 11433 | OCWEN LOAN SERVICING LLC<br>5720 PREMIER PARK DR<br>WEST PALM BEACH, FL 33407 |

## FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 281,293.51 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 7,591.22 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 38.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 76.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 19.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 133.00 | | | |
| Recording Fee: | $ | 107.00 | | | |
| Affidavit Fee: | $ | 8.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**

Recorded/Filed        06-22-2018 10:23
City Register File No.(CRFN):

**2018000206952**

*Annette M Hill*

*City Register Official Signature*



2018062100033001001CBBC3

**Document ID:** 2018062100033001     Document Date: 05-20-2018     Preparation Date: 06-21-2018
Document Type: MORTGAGE AND CONSOLIDATION

---

**CROSS REFERENCE DATA**
**CRFN:** 2014000421735
**CRFN:** 2014000421736

**Prepared By: Felicia Perry**
Ocwen Loan Servicing, LLC
Attn: HAMP Modifications
P.O. Box 24737
West Palm Beach, FL 33416
Investor #: █████

_____[Space Above This Line for Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
# (Step Two of Two-Step Documentation Process)

| | |
|---|---|
| Servicer: | Ocwen Loan Servicing, LLC |
| Original Mortgagor / Maker: | MARIE LAMOUR |
| Property/Maker's Address: | 109-41 156TH STREET |
| City: JAMAICA | County: QUEENS          State: NEW YORK |
| Marital Status: | SINGLE |
| Original Mortgagee / Payee: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), SOLELY AS NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION 570 Sylvan Ave. Englewood Cliffs, NJ 07632 |
| Original Amount: | $325,615.00 |
| Original Mortgage Date: | SEPTEMBER 17, 2010 |
| Date Recorded: | OCTOBER 29, 2010 |
| Reel / Book: | Page / Liber: _____ |
| CRFN / Document/Instrument #: | 2010000362079 |

| | |
|---|---|
| Present Holder of the Note and Lien: | OCWEN LOAN SERVICING, LLC |
| Holder's Mailing Address: | 5720 Premier Park Dr, |
| (Including county) | West Palm Beach, FL 33407 Palm Beach County |

New Money                          $ 7,591.22   Mortgage Tax: $155.62

LEGAL DESCRIPTION: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Registered Land (OH Only):     ☐ YES          ☐ NO

AFN# (OH Only):                    _____

District (NYC Only): _____   Section: 52          Block: 12147          Lot: 5

District (MA Only): _____

Lot (DC Only): _____          Square: _____

Pre-Mod Unpaid Balance: $273,702.29
New Unpaid Balance: $281,293.51

"PREMISES IMPROVED OR TO BE iMPROVED BY A 1 OR 2
FAMILY RESIDENCE OR DWELLING ONLY"

Certificate of Preparation


This is to certify that this instrument was prepared by Ocwen Loan Servicing, LLC, one
of the parties named in the instrument.


_Felicia Perry_
Felicia Perry
Authorized Officer


LOSS MITIGATION

Ocwen Loan Servicing LLC
Loss Mitigation Department
5720 Premier Park Dr
West Palm Beach, FL 33407
1-800-850-4622

Loan Number: ███████

Investor Loan Number: ███████

Investor/Owner: Ocwen Loan Servicing, LLC

This document was prepared by Ocwen Loan Servicing, LLC

**After Recording Return To:**

Ocwen Loan Servicing, LLC

Attention: Modification Processing

PO Box 24737

West Palm Beach, FL 33416-9838

FHA Case No. ███████

_____ [Space Above This Line For Recording Data]_____

## HOME AFFORDABLE MODIFICATION AGREEMENT

The debtor(s), Marie Lamour

Ocwen Loan Servicing, LLC through the servicer of the underlying mortgage loan agreement, Ocwen Loan Servicing, LLC, have agreed to modify the terms of said underlying mortgage loan agreement. Ocwen Loan Servicing, LLC is the owner of the loan and retains all rights to collect payments as per the underlying mortgage loan agreement. Ocwen Loan Servicing, LLC, remains servicer for said underlying mortgage loan agreement.

Borrower ("I"): Marie Lamour

Lender/Servicer or Agent for Lender/Servicer ("Lender"): Ocwen Loan Servicing, LLC

Investor/Owner: Ocwen Loan Servicing, LLC

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 09/17/2010

Loan Number: ███████

109-41 156th Street

Property Address ("Property"):                    Jamaica, NY 11433


If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, in the real property records of Queens County, NY. Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 109-41 156th Street, Jamaica, NY 11433, which real property is more particularly described as follows.

**(Legal Description – Attached as Exhibit If Recording Agreement)**


The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents


This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations**. I certify, represent to Lender and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

    B. I live in the Property as my principal residence, and the Property has not been condemned.

    C. There has been no change in the ownership of the Property since I signed the Loan Documents.

    D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for a modification of the Loan Documents)

    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct and

    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so and

    G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

    H. If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. Time is of the essence under this Agreement.

    B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and

this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents and

C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification**. If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 05/01/2018 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 06/01/2018.

A. The new Maturity Date will be: 05/01/2048.

B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Note will be $281,293.51 (the "New Principal Balance"). The "New Principal Balance" may represent the sum of the "Deferred Principal Balance", (if applicable) the "Deferred Principal Reduction" (if applicable) and the "Interest Bearing Principal Balance" which is $281,293.51. I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

Interest at the rate of 4.125% will begin to accrue on the Interest Bearing Principal Balance as of 05/01/2018 and the first new monthly payment on the Interest Bearing Principal will be due on 06/01/2018.

Borrower's payment schedule for the modified Loan is as follows:

| Years | Interest Rate (%) | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 30 | 4.125 | 05/01/2018 | $1,363.29 | $591.30 | $1,954.59 | 06/01/2018 | 360 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly. The escrow payment amounts shown are based on current data and represent a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

The above terms in this Section 3. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

C. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

D. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree which was recorded, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. Funds for Escrow Items. I will pay to the Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments the Lender requires to be escrowed. These items are called "Escrow Items". I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its right under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be

permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, any provision in the Note, as amended for the assessment of a penalty for full or partial prepayment of the Note is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in the first lien position and/or is fully enforceable upon modification and that if, under any circumstances and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), then the terms of this Agreement will not become effective on Modification Effective Date and the Agreement will be null and void.

L. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

M. Mortgage Electronic Registration Systems, Inc. (MERS) is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In the cases where the loan has been registered with MERS who has only legal title to the interests granted by the Borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage Loan.

N. In the event of a future default only, Borrower authorizes Lender, and Lender's successors and assigns, to share its contact information with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative. For purposes of this section, Third Parties are limited to HUD-certified housing counseling agencies or state or local government housing finance agencies.

O. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this section 4.N. shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement. This Agreement may not be supplemented, changed, modified or omitted except by written document executed by both me and Ocwen. This Modification constitutes the entire agreement between me and Ocwen and, supersedes all previous negotiations and discussions between me, Ocwen and/or Ocwen's predecessors in interest, and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Agreement.

P. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

## BORROWER ACKNOWLEDGEMENT

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to Ocwen Loan Servicing.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

5/20/18
Date

Marie Lamour
Marie Lamour

**UNIFORM FORM CERTIFICATE OF ACKNOWLEDGEMENT**

State of New York

County of ___NY___

On the __20__ day of __MAY__ in the year __2018__, before me, the undersigned, personally appeared __Marie Lamour__, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.


_Emmanuel Delacruz_
Notary Public

**EMMANUEL DELACRUZ**
Printed Name


My Commission Expires:

__05/09/2019__

County of NY

# LENDER ACKNOWLEDGEMENT

## (For Lender's Signature Only)

Lender acknowledges that no representations, agreements or promises were made or any of its representations other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

Ocwen Loan Servicing

*Felicia Perry*

Authorized Officer

**Felicia Perry**    JUN 1 2 2018

Date

State of ___**Florida**___

County of ___**Palm Beach**___

On this ___ day of ___JUN 1 2 2018___, before me, the undersigned, a Notary Public in and for said county and state, personally appeared ___**Felicia Perry**___ ⟨personally known to me⟩ or identified to my satisfaction to be the person who executed the within instrument as ___**Authorized Officer**___ of Ocwen Loan Servicing, LLC., said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

___Notary Public    *Gisele Cazeau*

My Commission Expires: ___JUN 2 7 2020___

GISELE CAZEAU
Commission # GG 6262
My Commission Expires
June 27, 2020

OCWEN LOAN SERVICING, LLC

By: Felicia Perry
Authorized Officer
Date: 13-June-2018

WITNESSES:

Desmond Cummings

Tamara Casseus

STATE OF Florida }
COUNTY OF Palm Beach }

On 13-June-2018, before me, the undersigned Notary Public, personally appeared Felicia Perry , Authorized Officer of Ocwen Loan Servicing, LLC, personally known to me to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual(s) or person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the county of Palm Beach, State of Florida.

Witness my hand and official seal.

GISELE CAZEAU
Commission # GG 6262
My Commission Expires
June 27, 2020

Notary — State of Florida
County of Palm Beach
**Gisele Cazeau**

Prepared by:

Felicia Perry

Form No. 3301 (01/08)
Short Form Commitment

# Exhibit "A"

Real property in the **FOURTH WARD** of the Borough of **QUEENS**, County of **QUEENS**, State of **New York**, described as follows:

WHICH UPON A CERTAIN MAP ENTITLED, "MAP OF PHRANER FARM, BELONGING TO BROWN, NORRIS AND HARDENBROOK", AND FILED IN THE OFFICE OF THE CLERK OF THE COUNTY OF QUEENS, IS KNOWN AS AND BY THE LOT NUMBER 17 IN BLOCK NUMBER 10 ON MAP OF SAID PROPERTY, BEING 25 FEET FRONT AND REAR BY 100 FEET DEEP, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF 156TH STREET (BROWN STREET), DISTANT 175.26 FEET FROM THE CORNER FORMED BY THE INTERSECTION OF THE EASTERLY SIDE OF 156TH STREET AND THE NORTHERLY SIDE OF BRINKERHOFF AVENUE (STATE STREET);

RUNNING THENCE NORTHERLY ALONG THE EASTERLY SIDE OF 156TH STREET, 25.04 FEET (25 FEET TAX MAP);

THENCE EASTERLY PARALLEL TO THE NORTHERLY SIDE OF BRINKERHOFF AVENUE, 100.10 FEET;

THENCE SOUTHERLY PARALLEL TO THE EASTERLY SIDE OF 156TH STREET, 25.04 FEET (25 FEET TAX MAP);

THENCE WESTERLY PARALLEL TO THE NORTHERLY SIDE OF BRINKERHOFF AVENUE, 100.10 FEET TO THE EASTERLY SIDE OF 156TH STREET AT THE POINT OR PLACE OF BEGINNING.

Premises described in Schedule "A" are known as:
Address: 109-41 156TH STREET
County: QUEENS
District: N/A
Section: 52
Block: 12147
Lot: 5

APN #: **BLOCK 12147 LOT 5**

# CHAIN OF TITLE

A mortgage to secure an original principal indebtedness of $325,615.00 dated SEPTEMBER 17, 2010 from MARIE LAMOUR to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, A CORPORATION, recorded OCTOBER 29, 2010 as CRFN 2010000362079.

Assigned from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, A CORPORATION to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR OCWEN LOAN SERVICING, LLC by an assignment recorded DECEMBER 23, 2014 as CRFN 2014000421735.

A loan modification agreement to secure a principal indebtedness of $298,564.73 dated AUGUST 01, 2013 from MARIE LAMOUR to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR OCWEN LOAN SERVICING, LLC, recorded DECEMBER 23, 2014 as CRFN 2014000421736.

An assignment is being presented for recording from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR OCWEN LOAN SERVICING, LLC to OCWEN LOAN SERVICING, LLC.



2018062100033001001S77C2

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID:** 2018062100033001          Document Date: 05-20-2018          Preparation Date: 06-21-2018
Document Type: MORTGAGE AND CONSOLIDATION

**SUPPORTING DOCUMENTS SUBMITTED:**

|  | Page Count |
|---|---|
| 255 MORTGAGE TAX EXEMPT AFFIDAVIT | 1 |

# Affidavit under Section 255 of the New York State Law

(Modification Agreement)     Loan No. ████████

State of FL

County of Palm Beach

I, Gisele Cazeau, being duly sworn, depose and say:

1. That he/she is the agent for the owner and holder of the hereinafter-described mortgage, and is familiar with the facts set forth herein.

2. MARIE LAMOUR, as Mortgagor made a certain mortgage bearing date of SEPTEMBER 17, 2010, in the principal amount of $325,615.00 to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, A CORPORATION as original Mortgagee, recorded on OCTOBER 29, 2010, as CRFN 2010000362079, upon which the mortgage tax of $6,644.80 was paid. Assigned from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, A CORPORATION to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR OCWEN LOAN SERVICING, LLC, recorded DECEMBER 23, 2014 as CRFN 2014000421735. MARIE LAMOUR, as Mortgagor made a certain loan modification agreement bearing date of AUGUST 01, 2013, in the principal amount of $298,564.73 to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR OCWEN LOAN SERVICING, LLC as Mortgagee, recorded on DECEMBER 23, 2014 as CRFN 2014000421736, upon which the mortgage tax of $0 was paid. An assignment is being presented for recording from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR OCWEN LOAN SERVICING, LLC to OCWEN LOAN SERVICING, LLC, in the clerk's office, upon which the mortgage tax will be duly paid thereon.

3. The instrument offered for recording is a Modification made by MARIE LAMOUR to OCWEN LOAN SERVICING, LLC, for $281,293.51 to be recorded in the QUEENS County Clerk's Office.

4. The instrument offered for recording modifies and does not create or secure any new or further lien, indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the recorded mortgage hereinabove first described with the exception of the following amount:

   a) Unpaid principal balance $273,702.29
   b) New unpaid principal balance $281,293.51
   c) B minus A equals $7,591.22
   d) Additional obligation secured be mortgage as modified

Additional mortgage recording tax of $155.62 is therefore being paid on this Modification on the sum set forth in 4c.

That Exemption from further tax is claimed under Section 255 of the Tax Law.

_signature_
Gisele Cazeau

Sworn before me to this day of: JUN 1 8 2018

NOTARY PUBLIC (SIGNATURE): Felicia Perry     Felicia Perry

My Commission Expires: AUG 0 4 2020

FELICIA PERRY
Commission # GG 18706
My Commission Expires
August 04, 2020

"PREMISES IMPROVED OR TO BE IMPROVED BY A 1 OR 2
FAMILY RESIDENCE OR DWELLING ONLY"

# NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2021011300959001001E1C5D

## RECORDING AND ENDORSEMENT COVER PAGE PAGE 1 OF 16

| | | |
|---|---|---|
| Document ID: **2021011300959001** | Document Date: 09-17-2010 | Preparation Date: 01-13-2021 |
| Document Type: MORTGAGE AND CONSOLIDATION | | |
| Document Page Count: 15 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY<br>3 FIRST AMERICAN WAY<br>SANTA ANA, CA 92707<br>SUPPORT@SIMPLIFILE.COM | FIRST AMERICAN TITLE INS<br>FAMS - DTO RECORDING 3 FIRST AMERICAN WAY<br>SANTA ANA, CA 92707<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 12147 | 5 | Entire Lot | 109-41 156TH STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

**CRFN:** 2010000362079

### PARTIES

| MORTGAGOR: | MORTGAGEE: |
|---|---|
| MARIE LAMOUR<br>109 -41 156TH ST<br>JAMAICA, NY 11433 | SECRETARY OF HOUSING AND URBAN<br>DEVELOPMENT<br>451 SEVENTH STREET SW<br>WASHINGTON, DC 20410 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 290,901.65 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 17,376.25 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 356.70 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 356.70 | | | |
| Recording Fee: | $ | 112.00 | | | |
| Affidavit Fee: | $ | 8.00 | | | |

### RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK

Recorded/Filed 01-19-2021 08:58
City Register File No.(CRFN):
**2021000019272**

*Annette M Hill*

*City Register Official Signature*

**Prepared By: Felicia Perry**
PHH Mortgage Services
Attn: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838
Investor #: ▉

_____[Space Above This Line for Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

| | |
|---|---|
| Servicer: | PHH Mortgage Services |
| Original Mortgagor / Maker: | MARIE LAMOUR |
| Marital Status: | SINGLE |
| Original Mortgagee / Payee: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, ITS SUCCESSORS AND ASSIGNS |
| Original Amount: $ | 325,615.00 |
| Original Mortgage Date: | SEPTEMBER 17, 2010 |
| Date Recorded: | OCTOBER 29, 2010 |
| Reel / Book: | ----            Page / Liber: ---- |
| CRFN / Document/Instrument #: | 2010000362079 |
| AP# / Parcel #: | ---- |
| Property Address: | 109-41 156TH STREET |
| City: JAMAICA | County: QUEENS            State: NEW YORK |

| | |
|---|---|
| Present Holder of the Note and Lien: | PHH MORTGAGE CORPORATION |
| Holder's Mailing Address: | PO Box 24737 |
| (Including county) | West Palm Beach, FL 33416-9838 |
| | Palm Beach County |

*356.70*

New Money            $ *17 376.25*

LEGAL DESCRIPTION: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Registered Land (OH Only):    ☐ YES        ☐ NO
AFN# (OH Only):            _____

District (NYC Only): _____    Section: 52    Block: 12147    Lot: 5

District (MA Only): _____

Lot (DC Only): _____        Square: _____

*Pu Mod. UPB.*
*273,525.40*
*New Loan*
*290,901.65*

*PREMISES IMPROVED OR TO BE IMPROVED FOR 1 & 2 FAMILY RESIDENCE ONLY*

Certificate of Preparation

This is to certify that this instrument was prepared by PHH Mortgage Corporation, one of the parties named in the instrument.

*Felicia Perry*

Felicia Perry
Authorized Signer

LOSS MITIGATION

PHH Mortgage Corporation
Loss Mitigation Department
5720 Premier Park Dr
West Palm Beach, FL 33407
1-800-850-4622

Loan Number: ███████
Investor Loan Number: ███████
  Investor/Owner: PHH Mortgage Corporation
This document was prepared by PHH Mortgage Corporation

**After Recording Return To:**
PHH Mortgage Corporation
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

FHA Case No. ███████

_____ [Space Above This Line For Recording Data]_____

## HOME AFFORDABLE MODIFICATION AGREEMENT

The debtor(s), MARIE LAMOUR

PHH Mortgage Corporation through the servicer of the underlying mortgage loan agreement, PHH
Mortgage Corporation, have agreed to modify the terms of said underlying mortgage loan agreement.
PHH Mortgage Corporation is the owner of the loan and retains all rights to collect payments as per the
underlying mortgage loan agreement.  PHH Mortgage Corporation, remains servicer for said underlying
mortgage loan agreement.


Borrower ("I"):  MARIE LAMOUR


Lender/Servicer or Agent for Lender/Servicer ("Lender"):  PHH Mortgage Corporation
Investor/Owner: PHH Mortgage Corporation
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 09/17/2010
Loan Number: ███████


Property Address ("Property"):        109 -41 156TH ST
                                      JAMAICA, NY 11433


*PREMISE IMPROVED OR TO BE IMPROVED FOR 1 or 2 FAMILY RESIDENCE DWELLING ONLY*

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") made this 17th day of November, 2020 ("Modification Agreement Date") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, in the real property records of Queens County, NY. Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 109 -41 156TH ST, JAMAICA, NY 11433, which real property is more particularly described as follows.

**(Legal Description – Attached as Exhibit if Recording Agreement)**

The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations**. I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

   B. I live in the Property as my principal residence, and the Property has not been condemned.

   C. There has been no change in the ownership of the Property since I signed the Loan Documents.

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for a modification of the Loan Documents)

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct and

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so and

   G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

   H. If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. Time is of the essence under this Agreement.

   B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents

will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents and

C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification**. If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 12/01/2020 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 01/01/2021.

A. The new Maturity Date will be: 12/01/2050.

B. The modified Principal balance of my Note includes amounts and arrearages that are past due as of the Modification Effective Date (including, but not limited to, unpaid and any previously deferred principal and interest, fees, escrow advances and other costs, collectively, "Unpaid Amounts") excluding any fees, costs and/or corporate advances not added to the account as of the Modification Agreement Date and amounts not added to the New Principal Balance due to investor and/or mortgage insurer restrictions less any amounts paid to the Lender but not previously credited to the Loan. Any amounts not added to the New Principal Balance will remain on the account until paid and will become due when the interest-bearing balance is paid in full or upon maturity as applicable pursuant to State or Federal law. The new Principal balance of my Note will be $290,901.65 (the "New Principal Balance"). The "New Principal Balance" may represent the sum of the "Deferred Principal Balance", (if applicable) the "Deferred Principal Reduction" (if applicable) and the "Interest Bearing Principal Balance" which is $290,901.65. I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

Interest at the rate of 3.25% will begin to accrue on the Interest Bearing Principal Balance as of 12/01/2020 and the first new monthly payment on the Interest Bearing Principal will be due on 01/01/2021.

Borrower's payment schedule for the modified Loan is as follows:

| Years | Interest Rate (%) | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 30 | 3.25 | 12/01/2020 | $1,266.02 | $586.42 | $1,852.44 | 01/01/2021 | 360 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly. The escrow payment amounts shown are based on current data and represent a reasonable estimate of

expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

The above terms in this Section 3. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

C.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

D.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.

4.  **Additional Agreements**. I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  Funds for Escrow Items. I will pay to the Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments the Lender requires to be escrowed. These items are called "Escrow Items". I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its right under the

Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibits the exercise of

such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, any provision in the Note, as amended for the assessment of a penalty for full or partial prepayment of the Note is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in the first lien position and/or is fully enforceable upon modification and that if, under any circumstances and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), then the terms of this Agreement will not become effective on Modification Effective Date and the Agreement will be null and void.

L. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

M. Mortgage Electronic Registration Systems, Inc. (MERS) is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In the cases where the loan has been registered with MERS who has only legal title to the interests granted by the Borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage Loan.

N. In the event of a future default only, Borrower authorizes Lender, and Lender's successors and assigns, to share its contact information with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative. For purposes of this section, Third Parties are limited to HUD-certified housing counseling agencies or state or local government housing finance agencies.

O. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender

deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this section 4.N. shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement. This Agreement may not be supplemented, changed, modified or omitted except by written document executed by both me and PHH Mortgage Services. This Modification constitutes the entire agreement between me and PHH Mortgage Services and, supersedes all previous negotiations and discussions between me, PHH Mortgage Services and/or PHH Mortgage Services predecessors in interest, and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Agreement.

P.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

# BORROWER ACKNOWLEDGEMENT

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to PHH Mortgage Corporation.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

11/20/20
Date

MARIE LAMOUR

**UNIFORM FORM CERTIFICATE OF ACKNOWLEDGEMENT**

State of New York

County of ___Bronx___

On the ___20___ day of ___November___ in the year ___2020___, before me, the undersigned, personally appeared ___Marie Lamour___, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Maylen Ortiz Peguero
Printed Name

MAYLEN AGUSTIN ORTIZ
STATE OF NEW YORK
NOTARY PUBLIC
QUALIFIED IN BRONX COUNTY
01OR6247091
MY COMMISSION EXPIRES 08/22
☆
COMMISSION EXPIRES

My Commission Expires:

August 22, 2023

# LENDER ACKNOWLEDGEMENT

## (For Lender's Signature Only)

Lender acknowledges that no representations, agreements or promises were made or any of its representations other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

PHH Mortgage Corporation

*Felicia Perry*

Authorized Signer

**Felicia Perry** DEC 2 2 2020
_____
Date

State of _____ **Florida**

County of _____ **Palm Beach**

On this __ day of DEC 2 2 2020 _____, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____ **Felicia Perry** _____ (personally known to me) or identified to my satisfaction to be the person who executed the within instrument as _____ **Authorized Signer** _____ of PHH Mortgage Corporation., said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

_____
Notary Public                **Hubert Paul**

My Commission Expires: _____

HUBERT PAUL
MY COMMISSION # GG 262016
EXPIRES: December 5, 2022
Bonded Thru Notary Public Underwriters

**EXHIBIT "A"**

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Fourth Ward of the Borough of Queens, County of Queens, City and State of New York, which upon a certain map entitled, "Map of Phraner Farm, belonging to Brown, Norris and Hardenbrook", and filed in the Office of the Clerk of the County of Queens, is known as and by the Lot Number 17 in Block Number 10 on map of said property, being 25 feet front and rear by 100 feet deep, bounded and described as follows:

BEGINNING at a point on the easterly side of 156th Street (Brown Street), distant 175.26 feet from the corner formed by the intersection of the easterly side of 156th Street and the northerly side of Brinkerhoff Avenue (State Street);

RUNNING THENCE northerly along the easterly side of 156th Street, 25.04 feet (25 feet tax map);

THENCE easterly parallel to the northerly side of Brinkerhoff Avenue, 100.10 feet;

THENCE southerly parallel to the easterly side of 156th Street, 25.04 feet (25 feet tax map);

THENCE westerly parallel to the northerly side of Brinkerhoff Avenue, 100.10 feet to the easterly side of 156th Street at the point or place of BEGINNING.

PHH MORTGAGE CORPORATION

*Felicia Perry*

By:  Felicia Perry
Authorized Signer
Date:  22-December-2020

WITNESSES:

Nadia S Cordero

Jorge Marin

STATE OF Florida }
COUNTY OF Palm Beach }
  On 22-December-2020, before me, the undersigned Notary Public, personally appeared Felicia Perry, Authorized Signer, of PHH Mortgage Corporation, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, that by her signature on the instrument, the individual(s) or person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the county of Palm Beach, State of Florida.

Witness my hand and official seal.

HUBERT PAUL
MY COMMISSION # GG 282016
EXPIRES: December 5, 2022
Bonded Thru Notary Public Underwriters

Notary –  State of Florida
    County of Palm Beach
    **Hubert Paul**

**Prepared by:**  Felicia Perry

- MARIE LAMOUR as Mortgagor made a certain mortgage bearing the date of 09/17/2010 in the principal amount $ 325,615.00 to Mortgage Electronic Registration Systems, (MERS), solely as nominee for FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION , as original Mortgagee, recorded on 10/29/2010 , in instrument no 2010000362079 ( Taxes pd 6644.80)

- Assigned from Mortgage Electronic Registration Systems, (MERS), solely as nominee for FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION to Mortgage Electronic Registration Systems, (MERS), solely as nominee for Ocwen loan Servicing LLC by assignment recorded, 12/23/2014 in instrument no. 2014000421735, in the clerks' office, upon which the mortgage tax was duly paid thereon.

- Loan Modification Agreement made by MARIE LAMOUR to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. SOLELY AS A NOMINEE FOR OCWEN LOAN SERVICING, LLC dated August 01, 2013 and recorded December 23, 2014 in (as) CITY REGISTER FILE NO. 2014000421736.

  Modified amount is now $298,564.73. NO TAXES PD

- According to public records, the foregoing document was assigned from to Mortgage Electronic Registration Systems, (MERS), solely as nominee for Ocwen loan Servicing LLC by to OCWEN LOAN SERVICING, LLC by assignment recorded June 27, 2018 as CITY REGISTER FILE NO. 2018000212270 of Official Records.

- This instrument is a modification given by Marie Lamour to PHH MORTGAGE CORPORATION AS SUCCESSOR BE TRUSTTE W/ Ocwen Loan Servicing, LLC and to be recorded in the QUEENS County of New York.



2021011300959001001SD2DC

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID: 2021011300959001**        Document Date: 09-17-2010        Preparation Date: 01-13-2021
Document Type: MORTGAGE AND CONSOLIDATION

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT                                                          2

# Affidavit under Section 255 of the New York State Law

(Modification Agreement) Loan No. ██████████

State of FL

County of PB

I, Diane Bischoff, being duly sworn, depose and say:

1. That he/she is the agent for the owner and holder of the hereinafter-described mortgage and is familiar with the facts set forth herein.
2. MARIE LAMOUR as Mortgagor made a certain mortgage bearing the date of 09/17/2010 in the principal amount $ 325,615.00 to Mortgage Electronic Registration Systems, (MERS), solely as nominee for FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION , as original Mortgagee, recorded on 10/29/2010 , in instrument no 2010000362079 ( Taxes pd 6644.80) , and assigned from Mortgage Electronic Registration Systems, (MERS), solely as nominee for FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION to Mortgage Electronic Registration Systems, (MERS), solely as nominee for Ocwen loan Servicing LLC by assignment recorded, 12/23/2014 in instrument no. 2014000421735, in the clerks' office, upon which the mortgage tax was duly paid thereon.

Loan Modification Agreement made by MARIE LAMOUR to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. SOLELY AS A NOMINEE FOR OCWEN LOAN SERVICING, LLC dated August 01, 2013 and recorded December 23, 2014 in (as) CITY REGISTER FILE NO. 2014000421736.

Modified amount is now $298,564.73. NO TAXES PD

According to public records, the foregoing document was assigned from to Mortgage Electronic Registration Systems, (MERS), solely as nominee for Ocwen loan Servicing LLC by to OCWEN LOAN SERVICING, LLC by assignment recorded June 27, 2018 as CITY REGISTER FILE NO. 2018000212270 of Official Records.

3. This instrument is a modification given by Marie Lamour to PHH MORTGAGE CORPORATION AS SUCCESSOR BE TRUSTTE W/ Ocwen Loan Servicing, LLC and to be recorded in the QUEENS County of New York.
4. The instrument offered for recording modifies and does not create or secure any new or further lien, indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the recorded mortgage hereinabove first described except for the following amount:

   a) Unpaid principal balance $273,525.40
   b) New unpaid principal balance $290,901.65

c) B minus A equals $17,376.25
d) Additional obligation secured be mortgage as modified

Additional mortgage recording tax of $356.70     is therefore being paid on this Modification on the sum set forth in 4c.

That Exemption from further tax is claimed under Section 255 of the Tax Law.

           Name          Diane W. Bischoff

Sworn before me to this day of:

NOTARY PUBLIC *Felicia Perry*

My Commission Expires: **Felicia Perry**

FELICIA PERRY
Notary Public - State of Florida
Commission # HH 025372
My Comm. Expires Aug 4, 2024
Bonded through National Notary Assn.