United States District Court
District of New York

PHH Mortgage Corporation,

**CERTIFICATE OF MERIT**

Plaintiff,

-against-

Marie Lamour; Secretary of Housing and Urban
Development; Stream Innovations Inc.; New
York City Environmental Control Board; New
York City Parking Violations Bureau; New York
City Transit Adjudication Bureau,

"John Doe #1" through "John Doe #12," the last
twelve names being fictitious and unknown to
plaintiff, the persons or parties intended being the
tenants, occupants, persons or corporations, if
any, having or claiming an interest in or lien
upon the premises, described in the complaint,

Defendant(s).

1. I am an attorney duly licensed to practice in the state of New York and am affiliated
   with the law firm of Robertson, Anschutz, Schneid, Crane & Partners, PLLC, the
   attorneys for the above-named plaintiff.

2. Daniel Delpesche, a Contract Management Coordinator of plaintiff or plaintiff's
   servicer, confirmed that he personally reviewed plaintiff's documents and records
   relating to this case for factual accuracy.

3. Based upon my review of the communication with plaintiff's representative, as well as
   upon my own inspection of the documents and other diligent inquiry, I certify that to




25-343612 - jg

the best of my knowledge, information and belief, there exists a reasonable basis for the commencement of a mortgage foreclosure action and that plaintiff or its nominee is entitled to enforce its rights under the loan documents in accordance with applicable law.

4. All of the relevant documents, all of which have been reviewed by me, are attached to this Certificate of Merit.

Dated: September 17, 2025

Yours, etc.

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC**
Attorney for Plaintiff

*/s/ Anthony Cellucci, Esq.*
_____
Anthony Cellucci, Esq.
900 Merchants Concourse, Suite 310
Westbury, NY 11590
516-280-7675

MIN: ███████████         Loan Number: ███████████

# NOTE

FHA Case No.

████████████

SEPTEMBER 17, 2010          Syosset                    NEW YORK
[Date]                      [City]                     [State]

109-41 156th Street, Jamaica, New York 11433
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means   FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, A
CORPORATION                                    and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
THREE HUNDRED TWENTY-FIVE THOUSAND SIX HUNDRED FIFTEEN AND
00/100                          Dollars (U.S. $ 325,615.00          ),
plus interest, to the order of Lender.  Interest will be charged on unpaid principal, from the date of disbursement of
the loan proceeds by Lender, at the rate of  FOUR AND 750/1000                          percent
(      4.750  %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated
the same date as this Note and called the "Security Instrument."  The Security Instrument protects the Lender from
losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the 1st    day of each month beginning
on   NOVEMBER 1, 2010            .  Any principal and interest remaining on the   1st    day of
OCTOBER, 2040               , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at   570 SYLVAN AVENUE, ENGLEWOOD CLIFFS, NEW
JERSEY 07632
                                                      , or at such other place
as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 1,698.57
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to
principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for Payment Adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants
of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge
were a part of this Note.

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000 percent ( 4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by delivering it or by mailing it by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE 09/25/09                    Page 2 of 3                    DocMagic *eForms* 800-649-1362
                                                                    www.docmagic.com

this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Marie Lamour_ (Seal)
Marie Lamour                     -Borrower

_____ (Seal)
                                 -Borrower

Pay to the order of              (Seal)
GMAC Mortgage, LLC               -Borrower
Without Recourse:

_Alana Gerhart_
Alana Gerhart, Assistant Secretary
Ally Bank f/k/a GMAC Bank        (Seal)
                                 -Borrower

Pay to the order of
Ocwen Loan Servicing, LLC        (Seal)
Without Recourse:                -Borrower

Donna Valerius, Limited Signing Officer
GMAC Mortgage LLC f/k/a
GMAC Mortgage Corporation        (Seal)
                                 -Borrower

Pay to the order of

Without recourse
Ocwen Loan Servicing, LLC

_Charlotte E Julion_
CHAR JULION, Authorized Signers

[Sign Original Only]

SEE ATTACHED ALLONGE

DocMagic *eForms* 800-649-1362
www.docmagic.com

# ALLONGE

LOAN NUMBER: ███████

BORROWER(S): MARIE LAMOUR

PROPERTY ADDRESS: 109-41 156TH STREET
JAMAICA, NY 11433-3132

NOTE/LOAN AMOUNT: $325,615.00

NOTE/LOAN DATE: 9/17/2010

PAY TO THE ORDER OF:

~~VOID~~

WITHOUT RECOURSE
OCWEN LOAN SERVICING, LLC

_____
Kevin Nowak
Authorized Signer

# ALLONGE

Loan Number: ███████████

Loan Date: SEPTEMBER 17, 2010

Borrower(s): Marie Lamour

Property Address: 109-41 156th Street, Jamaica, New York 11433

Principal Balance: $325,615.00

### PAY TO THE ORDER OF

### ALLY BANK

**Without Recourse**

Company Name: <u>FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION</u>

By: _Betty Gonzalez_

Chief Operations Officer
(Title)

# ALLONGE

LOAN NUMBER: ███████

BORROWER(S): MARIE LAMOUR

PROPERTY ADDRESS: 109 -41 156TH ST
JAMAICA, NY 11433

NOTE/LOAN AMOUNT: $325,615.00

NOTE/LOAN DATE: 9/17/2010

PAY TO THE ORDER OF:

WITHOUT RECOURSE
OCWEN LOAN SERVICING, LLC

Thomas Young
Authorized Signer

████████

# NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2010102100607002001EF532

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 11 |
|---|---|---|
| **Document ID: 2010102100607002** | Document Date: 09-17-2010 | Preparation Date: 10-21-2010 |
| Document Type: MORTGAGE | | |
| Document Page Count: 10 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| CITI ABSTRACT, INC.<br>AS AGENT FOR CHICAGO TITLE- TITLE NO:<br>10CAQ-5202B<br>127-21 LIBERTY AVENUE<br>RICHMOND HILL, NY 11419<br>718-323-8100 | FIRST RESIDENTIAL MORTGAGE SERVICES<br>CORPORATION<br>570 SYLVAN AVENUE<br>ENGLEWOOD CLIFFS, NJ 07632 |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 12147 | 5 | Entire Lot | 109-41 156TH STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

## CROSS REFERENCE DATA

CRFN_____ *or* Document ID_____ *or* _____ Year_____ Reel ___ Page _____ *or* File Number_____

## PARTIES

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| MARIE LAMOUR<br>109-41 156TH STREET<br>JAMAICA, NY 11433 | FIRST RESIDENTIAL MORTGAGE SERVICES<br>CORPORATION<br>570 SYLVAN AVENUE<br>ENGLEWOOD CLIFFS, NJ 07632 |

## FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 325,615.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 325,615.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 1,628.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 3,256.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 814.00 | | | |
| MTA: | $ | 946.80 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 6,644.80 | | | |
| Recording Fee: | $ | 87.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed 10-29-2010 10:44
City Register File No.(CRFN):
**2010000362079**

*Annette M. Hill*

**City Register Official Signature**

Mortgage Recording Tax:

**Said premises is improved or to be improved by a one or two family dwelling**

After Recording Return To:
FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION
570 SYLVAN AVENUE
ENGLEWOOD CLIFFS, NEW JERSEY 07632
Loan Number: ███████████

─────────── [Space Above This Line For Recording Data] ───────────

# MORTGAGE

| FHA CASE NO. |
| --- |
| ████████ |

MIN: ███████████████

THIS MORTGAGE ("Security Instrument") is given on    SEPTEMBER 17, 2010
The mortgagor is  Marie Lamour,

("Borrower"),

whose address is  109-41 156th Street, Jamaica, New York 11433

This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as Mortgagee. **MERS in the nominee for Lender**, as hereinafter defined, and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 3300 S.W. 34th Avenue, Suite 101, Ocala, FL 34474. MERS telephone number is (888) 679-MERS.
FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, A CORPORATION                ("Lender")
is organized and existing under the laws of    NEW JERSEY
and has an address of  570 SYLVAN AVENUE, ENGLEWOOD CLIFFS, NEW JERSEY
07632
Borrower owes Lender the principal sum of   THREE HUNDRED TWENTY-FIVE THOUSAND
SIX HUNDRED FIFTEEN AND 00/100            Dollars (U.S. $ 325,615.00         ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on OCTOBER 1, 2040
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in   Queens                              County,
New York:

Section:  52      Block: 12147      Lot(s)/Unit No(s).: 5

FHA NEW YORK MORTGAGE - MERS
NYMTGZ.FHA 06/23/10                Page 1 of 9            DocMagic eForms 800-649-1362
                                                          www.docmagic.com

Legal Description Block 12147 Lot 5 Legal Description is
attached hereto and made a part Hereof

which has the address of                     109-41 156th Street
                                                    [Street]

        Jamaica                    , New York      11433        ("Property Address"):
        [City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security
Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose
and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling
this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
    **1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.
    **2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly
payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and
special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the
Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a
mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in
which such premium would have been required if Lender still held the Security Instrument, each monthly payment
shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary,
or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary,
in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items
are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

    Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the
maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures
Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended
from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements
or disbursements before the Borrower's payments are available in the account may not be based on amounts due for
the mortgage insurance premium.

**Schedule A Description**

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Fourth Ward of the Borough of Queens, County of Queens, City and State of New York, which upon a certain map entitled, "Map of Phraner Farm, belonging to Brown, Norris and Hardenbrook", and filed in the Office of the Clerk of the County of Queens, is known as and by the Lot Number 17 in Block Number 10 on map of said property, being 25 feet front and rear by 100 feet deep, bounded and described as follows:

BEGINNING at a point on the easterly side of 156th Street (Brown Street), distant 175.26 feet from the corner formed by the intersection of the easterly side of 156th Street and the northerly side of Brinkerhoff Avenue (State Street);

RUNNING THENCE northerly along the easterly side of 156th Street, 25.04 feet (25 feet tax map);

THENCE easterly parallel to the northerly side of Brinkerhoff Avenue, 100.10 feet;

THENCE southerly parallel to the easterly side of 156th Street, 25.04 feet (25 feet tax map);

THENCE westerly parallel to the northerly side of Brinkerhoff Avenue, 100.10 feet to the easterly side of 156th Street at the point or place of BEGINNING.

SAID PREMISES being known as:  109-41 156TH STREET, JAMAICA, NEW YORK 11433

SECTION: 52          BLOCK: 12147          LOT: 5

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j - 3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 DAYS
from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS                     from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

DocMagic *eFarms* 800-849-1362
www.docmagic.com

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may bring a lawsuit to take away all of Borrower's remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by applicable law and will have the right to add all reasonable attorneys' fees to the amount Borrower owes Lender, which fees shall become part of the Sums Secured.**

**Lender may require immediate payment in full under this paragraph 9.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.**

**19. Lender's Obligation to Discharge This Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. Borrower will pay all costs of recording the discharge in the proper official records.

**20. Agreements About New York Lien Law.** Borrower will receive all amounts lent by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, Borrower will: (A) hold all amounts which Borrower receives and which Borrower has a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before Borrower uses them for any other purpose. The fact that Borrower is holding those amounts as a "trust fund" means that for any building or other improvement located on the Property Borrower has a special responsibility under the law to use the amount in the manner described in this paragraph 20.

**21. Borrower's Statement Regarding the Property** *[check box as applicable].*

&#9746; This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

&#9744; This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

&#9744; This Security Instrument does not cover real property improved as described above.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument.

[Check applicable box(es)].

&#9744; Condominium Rider     &#9744; Graduated Payment Rider     &#9744; Growing Equity Rider

&#9744; Planned Unit Development Rider     &#9744; Adjustable Rate Rider     &#9744; Rehabilitation Loan Rider

&#9744; Non-Owner Occupancy Rider     &#9744; Other [Specify]

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

FHA NEW YORK MORTGAGE - MERS
NYMTGZ.FHA 06/23/10      Page 7 of 9      DocMagic *eForms* 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 9 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Marie Lamour_ (Seal)
Marie Lamour          -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

Witness:                                    Witness:

_____                     _____

FHA NEW YORK MORTGAGE - MERS
NYMTGZ.FHA  06/23/10                         Page 8 of 9                    DocMagic eForms 800-649-1362
                                                                           www.docmagic.com

—————————————— [Space Below This Line For Acknowledgment] ——————————————

State of New York )
County of _Nassau_ ) ss.
         )

On the _17_ day of _September_ , in the year _2010_ , before me,

the undersigned, personally appeared _Marie Lamour_ _____

_____

_____ ,

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

SHARON ROTHBERG
Notary Public, State of New York
No. 01RO6062871
Qualified in Nassau County
Commission Expires August 20, 2013

SEAL

_____
Notary Public State of New York

_Sharon Rothberg_
_____
Print or Type Name

(Seal, if any)                    My commission expires: _____

Tax Map Information No.:

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2014121500680001001E949D

| **RECORDING AND ENDORSEMENT COVER PAGE** | | **PAGE 1 OF 3** |
|---|---|---|

| **Document ID: 2014121500680001** | Document Date: 10-29-2014 | Preparation Date: 12-15-2014 |
|---|---|---|

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| SECURITY CONNECTIONS INC | SECURITY CONNECTIONS INC |
| 240 TECHNOLOGY DRIVE | 240 TECHNOLOGY DR |
| IDAHO FALLS, ID 83401 | IDAHO FALLS, ID 83401 |
| SUPPORT@SIMPLIFILE.COM | SUPPORT@SIMPLIFILE.COM |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 12147 | 5 | Entire Lot | 109-41 156th STREET |

Property Type: DWELLING ONLY - 1 FAMILY

## CROSS REFERENCE DATA

CRFN: 2010000362079

## PARTIES

| **ASSIGNOR/OLD LENDER:** | **ASSIGNEE/NEW LENDER:** |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC |
| 1901 E VOORHEES ST STE C | 1901 E VOORHEES ST STE C |
| DANVILLE, IL 61834 | DANVILLE, IL 61834 |

☒ Additional Parties Listed on Continuation Page

## FEES AND TAXES

| **Mortgage :** | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 42.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed 12-23-2014 11:54
City Register File No.(CRFN):
**2014000421735**

*Jennette M Hill*
*City Register Official Signature*



2014121500680001001C961D

**Document ID:** 2014121500680001     Document Date: 10-29-2014     Preparation Date: 12-15-2014
Document Type: ASSIGNMENT, MORTGAGE

---

**PARTIES**

**ASSIGNOR/OLD LENDER:**
FIRST RESIDENTIAL MORTGAGE SERVICES
CORPORATION
1901 E VOORHEES ST STE C
DANVILLE, IL 61834

---

**PARTIES**

**ASSIGNEE/NEW LENDER:**
OCWEN LOAN SERVICING LLC
1901 E VOORHEES ST STE C
DANVILLE, IL 61834

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:

ALISON CAMERON
OCWEN LOAN SERVICING, LLC
3451 HAMMOND AVE
WATERLOO, IA 50702

*Record 1st*

## CORPORATE ASSIGNMENT OF MORTGAGE

**Queens, New York**
**SELLER'S SERVICING #** ▇▇▇▇▇▇ "LAMOUR"

**MIN #:** ▇▇▇▇▇▇▇ **SIS #:** 1-888-679-6377

Date of Assignment: October 29th, 2014
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS DESIGNATED NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS at POBOX 2026 FLINT MI 48501, 1901 E VOORHEES ST. STE C, DANVILLE, IL 61834
Assignee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS DESIGNATED NOMINEE FOR OCWEN LOAN SERVICING, LLC, BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS at PO BOX 2026, FLINT, MI 48501, 1901 E VOORHEES STREET, STE C., DANVILLE, IL 61834
Executed By: MARIE LAMOUR  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS DESIGNATED NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 09/17/2010 Recorded: 10/29/2010 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2010000362079  In the County of Queens, State of New York.

Section/Block/Lot -12147-5

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC is at 1901 E Voorhees Street, Suite C, Danville, IL 61834, P.O. BOX 2026, FLINT, MI 48501-2026

Property Address: 109-41 156TH STREET, JAMAICA, NY  11433
    This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $325,615.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS DESIGNATED NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS
On ____ *OCT 3 1 2014*

By: *Alison Cameron*
    Alison Cameron
_____, Assistant Secretary

STATE OF Iowa
COUNTY OF Black Hawk

On the *31st* day of *October* in the year *2014* before me, the undersigned, personally appeared _____ Alison Cameron _____, Assistant Secretary, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individuals(s) made such appearance before the undersigned in the County of Black Hawk, State of Iowa.

WITNESS my hand and official seal,

*Rachel Moore*
RACHEL MOORE
Notary Expires: 09/23/2016 #764817
Black Hawk, Iowa

RACHEL MOORE
COMMISSION NO.764817
MY COMMISSION EXPIRES
SEPTEMBER 23, 2016

(This area for notarial seal)

# NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2018062500802001001EEB19

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

**Document ID:** 2018062500802001     Document Date: 06-18-2018     Preparation Date: 06-25-2018
**Document Type:** ASSIGNMENT, MORTGAGE
**Document Page Count:** 2

| PRESENTER: | RETURN TO: |
|---|---|
| FIRST AMERICAN MORTGAGE SOLUTIONS- MOD SEGMENT<br>3 FIRST AMERICAN WAY<br>SANTA ANA, CA 92707<br>SUPPORT@SIMPLIFILE.COM | FIRST AMERICAN TITLE INS<br>3 FIRST AMERICAN WAY<br>SANTA ANA, CA 92707<br>SUPPORT@SIMPLIFILE.COM |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 12147 | 5 | Entire Lot | 109-41 156TH STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

## CROSS REFERENCE DATA

**CRFN:** 2010000362079
☒ Additional Cross References on Continuation Page

## PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MARIE LAMOUR<br>109-41 156TH STREET<br>JAMAICA, NY 11433 | OCWEN LOAN SERVICING LLC<br>1661 WORTHINGTON ROAD, SUITE 100<br>WEST PALM BEACH, FL 33409 |

☒ Additional Parties Listed on Continuation Page

## FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 47.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    06-27-2018 10:04
City Register File No.(CRFN):
**2018000212270**

*Annette M Hill*

*City Register Official Signature*



2018062500802001001CE999

**Document ID:** 2018062500802001     Document Date: 06-18-2018     Preparation Date: 06-25-2018
Document Type: ASSIGNMENT, MORTGAGE

**CROSS REFERENCE DATA**
**CRFN:** 2014000421735

| PARTIES |
| --- |

**ASSIGNOR/OLD LENDER:**
MERS AS NOMINEE FOR OCWEN LOAN SERVICING
LLC
1901 E VOORHEES ST STE C
DANVILLE, IL 61834

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:

OCWEN LOAN SERVICING, LLC
1795 INTERNATIONAL WAY
IDAHO FALLS, ID 83402

## CORPORATE ASSIGNMENT OF MORTGAGE

Queens, New York
SELLER'S SERVICING #▇▇▇▇▇▇ "LAMOUR"
SELLER'S LENDER ID#: ▇▇▇▇▇▇
OLD SERVICING #: ▇▇▇▇▇▇

MIN #: ▇▇▇▇▇▇▇▇▇   SIS #: 1-888-679-6377

Date of Assignment:     JUN 1 8 2018

Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC ("MERS"), SOLELY AS NOMINEE FOR OCWEN LOAN SERVICING LLC, ITS SUCCESSORS AND/OR ASSIGNS at PO BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST, STE C, DANVILLE, IL 61834
Assignee: OCWEN LOAN SERVICING, LLC at 1661 WORTHINGTON ROAD, SUITE 100, WEST PALM BEACH, FL 33409
Executed By: MARIE LAMOUR  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, ITS SUCCESSORS AND/OR ASSIGNS
Date of Mortgage: 09/17/2010  Recorded:  10/29/2010  in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument Number: 2010000362079  In the County of Queens, State of New York.

Assigned Wholly by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, ITS SUCCESSORS AND/OR ASSIGNS TO MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR OCWEN LOAN SERVICING, LLC., ITS SUCCESSORS AND/OR ASSIGNS Dated: 10/31/2014 Recorded: 12/23/2014 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2014000421735

Section/Block/Lot NA-12147-5

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC has a physical address at 1901 E Voorhees Street, Suite C, Danville, IL 61834 and a mailing address at P.O. BOX 2026, FLINT, MI 48501-2026

Property Address: 109-41 156TH STREET, JAMAICA, NY 11433
   This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $325,615.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC ("MERS"), SOLELY AS NOMINEE FOR OCWEN LOAN SERVICING LLC, ITS SUCCESSORS AND/OR ASSIGNS

On    JUN 1 8 2018

By _____
   Beverly J. Clayton

Assistant Secretary

STATE OF FLORIDA
COUNTY OF PALM BEACH
On the __JUN 1 8 2018__ day of ___JUNE___ in the year ___2018___ before me, the undersigned, personally appeared Beverly J Clayton, Assistant Secretary, <u>personally known to me</u> or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) <u>is</u>(are) subscribed to the within instrument and acknowledged to me that he/<u>she</u>/they executed the same in his/<u>her</u>/their capacity(ies), and that by his/<u>her</u>/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individuals(s) made such appearance before the undersigned in the County of PALM BEACH, State of FLORIDA.

WITNESS my hand and official seal,

Joe Simmons

Notary Expires: 10/16/2021
State of ___Florida___ County of ___Palm Beach___

Notary Public State of Florida
Joe Simmons
My Commission GG 131461
Expires 10/16/2021

(This area for notarial seal)

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2014121500680002001E94D9

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 13 |
|---|---|---|
| Document ID: **2014121500680002** | Document Date: 08-01-2013 | Preparation Date: 12-15-2014 |

Document Type: AGREEMENT
Document Page Count: 11

| PRESENTER: | RETURN TO: |
|---|---|
| SECURITY CONNECTIONS INC<br>240 TECHNOLOGY DRIVE<br>IDAHO FALLS, ID 83401<br>SUPPORT@SIMPLIFILE.COM | SECURITY CONNECTIONS INC<br>240 TECHNOLOGY DR<br>IDAHO FALLS, ID 83401<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 12147 | 5 | Entire Lot | 109-41 156th STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN: 2010000362079

### PARTIES

| PARTY 1: | PARTY 2: |
|---|---|
| MARIE LAMOUR<br>109-41 156TH STREET<br>JAMAICA, NY 11433 | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC<br>1901 VOORHEES STREET, SUITE C<br>DANVILLE, IL 61834 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 298,564.73 | | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | 255 | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 92.00 | | |
| Affidavit Fee: | $ | 8.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed 12-23-2014 11:54
City Register File No.(CRFN):
**2014000421736**

*City Register Official Signature*



2014121500680002001C9659

**Document ID:** 2014121500680002     Document Date: 08-01-2013     Preparation Date: 12-15-2014
Document Type: AGREEMENT

**PARTIES**
**PARTY 2:**
OCWEN LOAN SERVICING LLC
3451 HAMMOND AVE
WATERLOO, IA 50702

Investor Loan # ██████████
Custodian ID: ███
This document was prepared by Ocwen Loan Servicing, LLC

**After Recording Return To:**
Ocwen Loan Servicing, LLC
Attention: ~~Loss Mitigation~~ Alison Cameron
~~3700 J Street SW~~ 3451 Hammond Ave
~~Suite 555~~ Waterloo, Ia 50702
~~Cedar Rapids, IA 52404~~

Record and

Unpaid prior balance 298564.73   new balance 298,564.73

8/1/13

[Space Above This Line For Recording Data]

# HOME AFFORDABLE MODIFICATION AGREEMENT  no new

$

Borrower ("I"): MARIE LAMOUR
Lender/Servicer or Agent for Lender/Servicer ("Lender"): Ocwen Loan Servicing, LLC
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): September 17, 2010 original UPB: US $325,215.0
Loan Number: ██████████
Property Address ("Property"): 109-41 156TH STREET JAMAICA NY 11433

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, and if applicable, recorded on October 29, 2010 with Instrument Number*in Book and/or Page number of the real property records of QUEENS County, NY. Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 109-41 156TH STREET JAMAICA NY 11433, which real property is more particularly described as follows. "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender/Servicer or Agent for Lender/Servicer. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of 1901 E Voorhees Street, Suite C, Danville, IL 61834 or P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

*2010000362079

**(Legal Description – Attached as Exhibit if Recording Agreement)**

Parcel: 12147 0005

1-2 family dwelling

/

## MORTGAGE SCHEDULE

A certain mortgage bearing the date of 9/17/10 in the principal amount of $325,615.00 was made by Marie Lamour and Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for First Residential Mortgage Services Corporation, beneficiary of the security instrument, its successors and assigns as original mortgagee recorded on 10/29/10 in Instrument 2010000362079 at which time mortgage tax in the amount of $6644.80 was duly paid.

--This mortgage is being assigned from Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for First Residential Mortgage Services Corporation, beneficiary of the security instrument, its successors and assigns to Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for Ocwen Loan Servicing, LLC, beneficiary of the security instrument, its successors and assigns dated 10/29/14 and recorded herewith.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. I live in the Property as my principal residence, and the Property has not been condemned;

   C. There has been no change in the ownership of the Property since I signed the Loan Documents;

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for a modification of the Loan Documents);

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct; and,

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and,

   G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

   H. If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. TIME IS OF THE ESSENCE under this Agreement;

   B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on September 01, 2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on September 01, 2013.

   A. The new Maturity Date will be: August 01, 2043.

   B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Lender but not

previously credited to my Loan. The new Principal balance of my Note will be $298,564.73 (the "New Principal Balance").

C. Interest at the rate of 3.750% will begin to accrue on the New Principal Balance as of August 01, 2013 and the first new monthly payment on the New Principal Balance will be due on September 01, 2013. My payment schedule for the modified Loan is as follows:

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Payment Ends on |
|---|---|---|---|---|---|---|
| 3.750% | August 01, 2013 | $1,382.69 | $489.59, may adjust periodically | $1,872.28, may adjust periodically | September 01, 2013 | August 01, 2043 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step interest rate or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower or co-borrower are divorced and the property has been transferred to one spouse in the divorce decree which was recorded, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents; (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  That this agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.  **Funds for Escrow Items.**  I will pay to the Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments the Lender requires to be escrowed.  These items are called "Escrow Items."  I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D.  I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items.  Lenders may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents.  If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its right under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimate of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge.  Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds.  Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to

me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

F.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer or assumption of the Loan, including this Agreement to a transferee of my property permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

J.  That, as of the Modification Effective Date, any provision in the Note, as amended for the assessment of a penalty for full or partial prepayment of the Note is null and void.

K.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in the first lien position and/or is fully enforceable upon modification and that if, under any circumstances and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), then the terms of this Agreement will not become effective on Modification Effective Date and the Agreement will be null and void.

L.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I

understand that either a corrected Agreement or letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

M. Mortgage Electronic Registration Systems, Inc. (MERS) is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679 MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the Borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of lender including, but not limited to, releasing and canceling the mortgage Loan.

N. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosures of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v)any HUD certified housing counselor.

O. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this section 4.N. shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

P. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

9/4/13 _Marie Lamour_

Date     MARIE LAMOUR

_____     _____
Date

_____     _____
Date

_____     _____
Date

## BORROWER ACKNOWLEDGMENT

State of _New York_

County of _New York_

On this 4th day of _September 2013_ before me, the undersigned, a Notary Public in and for said county and state, personally appeared MARIE LAMOUR, personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

Notary Public     _Yuderka Vargas_
My Commission Expires: _June 1, 2015_

**YUDERKA VARGAS**
Notary Public, State of New York
No. 31-4897353
Qualified in New York County
Commission Expires June 01, 2015

*See attached*

## UNIFORM FORM CERTIFICATE OF ACKNOWLEDGMENT

STATE OF NEW YORK )
                   ss:
COUNTY OF  New York

On the _____5 th_____ day of __September__ in the year _2013_, before me, the undersigned, personally appeared ‐_MARIE  LAMOUR_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public  Yuderka Vargas

**YUDERKA VARGAS**
Notary Public, State of New York
No. 31-4897353
Qualified in New York County
Commission Expires June 01, 2015

Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for Ocwen Loan Servicing, LLC, beneficiary of the security instrument, its successors and assigns.

Dated: _____ OCT 3 0 2014 _____

By: _Michelle Treloar_
     Michelle Treloar
     Assistant Secretary

LENDER ACKNOWLEDGMENT

State of Iowa
County of Black Hawk

On this _30_ day of _October_, _2014_, before me, the undersigned, a Notary Public in and for said county and state, personally appeared Michelle Treloar, personally known to me or identified to my satisfaction to be the person who executed the within instrument as Assistant Secretary of Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for Ocwen Loan Servicing, LLC, beneficiary of the security instrument, its successors and assigns and they duly acknowledged that said instrument is the act and deed of said entity, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

_Rachel Moore_
Notary Public    **Rachel Moore**
My Commission Expires: _9.23.2016_



RACHEL MOORE
COMMISSION NO.764817
MY COMMISSION EXPIRES
SEPTEMBER 23, 2016

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Fourth Ward of the Borough of Queens, County of Queens, City and State of New York, which upon a certain map entitled, "Map of Phraner Farm, belonging to Brown, Norris and Hardenbrook", and filed in the Office of the Clerk of the County of Queens, is known as and by the Lot Number 17 in Block Number 10 on map of said property, being 25 feet front and rear by 100 feet deep, bounded and described as follows:

BEGINNING at a point on the easterly side of 156th Street (Brown Street), distant 175.26 feet from the corner formed by the intersection of the easterly side of 156th Street and the northerly side of Brinkerhoff Avenue (State Street);

RUNNING THENCE northerly along the easterly side of 156th Street, 25.04 feet (25 feet tax map);

THENCE easterly parallel to the northerly side of Brinkerhoff Avenue, 100.10 feet;

THENCE southerly parallel to the easterly side of 156th Street, 25.04 feet (25 feet tax map);

THENCE westerly parallel to the northerly side of Brinkerhoff Avenue, 100.10 feet to the easterly side of 156th Street at the point or place of BEGINNING.

SAID PREMISES being known as: 109-41 156TH STREET, JAMAICA, NEW YORK 11433

SECTION:  52          BLOCK:  12147          LOT:  5



2014121500680002001S5A58

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID: 2014121500680002**   Document Date: 08-01-2013   Preparation Date: 12-15-2014
Document Type: AGREEMENT

---

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

   255 MORTGAGE TAX EXEMPT AFFIDAVIT           1

# AFFIDAVIT UNDER SECTION 255 OF THE NEW YORK STATE LAW
## (MODIFICATION AGREEMENT)

Loan # ███████

State of Iowa}      }SS
County of Black Hawk}

I, ALISON CAMERON, Authorized Signer, being duly sworn, deposes
      and says:

1. That he/she is the agent for the owner and holder of the hereinafter described mortgage, and is familiar with the facts set forth herein.

2. A certain mortgage bearing the date of 9/17/10 in the principal amount of $325,615.00 was made by Marie Lamour and Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for First Residential Mortgage Services Corporation, beneficiary of the security instrument, its successors and assigns as original mortgage recorded on 10/29/10 in Instrument 2010000362079 at which time mortgage tax in the amount of $6644.80 was duly paid.

--This mortgage is being assigned from Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for First Residential Mortgage Services Corporation, beneficiary of the security instrument, its successors and assigns to Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for Ocwen Loan Servicing, LLC, beneficiary of the security instrument, its successors and assigns dated 10/29/14 and recorded herewith.

      Balance Remaining: $298,564.73

3. The instrument offered for recording herewith is a Modification made between Marie Lamour and Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for Ocwen Loan Servicing, LLC, beneficiary of the security instrument, its successors and assigns Effective 8/1/13
And to be recorded in the Queens county clerk's office

4. The instrument offered for recording modifies and does not create or secure any new or further lien, indebtedness or obligation other than the principal indebtedness or obligation secured by or which under contingency may be secured by the recorded Mortgage hereinabove first described with the exception of the following amount:

      a) Unpaid principal balance:    $298,564.73
      b) New unpaid principal balance: $298,564.73
      c) B minus A equals:       $0.00
      d) Additional obligation secured by mortgage as modified $0.00
      e) Total amount of which taxes are to be paid on $0.00

Additional mortgage recording tax of $0.00 is therefore being paid on this Modification on the sum set forth in 4c.
That Exemption from further tax is CLAIMED under Section 255 of the Tax Law.

      OCT 3 1 2014
Dated:_____

*Alison Cameron*
Alison Cameron-Authorized Signer

Sworn before me to this ___31st___ day of __October__, _2014_

*Rachel Moore*
Notary Public: RACHEL MOORE
My Commission Expires: _9-23-2016_

RACHEL MOORE
COMMISSION NO.784817
MY COMMISSION EXPIRES
SEPTEMBER 23, 2016

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2018062100033001001EB943

| | | |
|---|---|---|
| **Document ID: 2018062100033001** | Document Date: 05-20-2018 | Preparation Date: 06-21-2018 |

Document Type: MORTGAGE AND CONSOLIDATION
Document Page Count: 14

| PRESENTER: | RETURN TO: |
|---|---|
| FIRST AMERICAN MORTGAGE SOLUTIONS- MOD SEGMENT<br>3 FIRST AMERICAN WAY<br>SANTA ANA, CA 92707<br>SUPPORT@SIMPLIFILE.COM | FIRST AMERICAN TITLE INS<br>3 FIRST AMERICAN WAY<br>SANTA ANA, CA 92707<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 12147 | 5 | Entire Lot | 109-41 156TH STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

**CRFN:** 2010000362079
☒ Additional Cross References on Continuation Page

### PARTIES

| MORTGAGOR: | MORTGAGEE: |
|---|---|
| MARIE LAMOUR<br>109-41 156TH STREET<br>JAMAICA, NY 11433 | OCWEN LOAN SERVICING LLC<br>5720 PREMIER PARK DR<br>WEST PALM BEACH, FL 33407 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 281,293.51 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 7,591.22 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 38.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 76.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 19.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 133.00 | | | |
| Recording Fee: | $ | 107.00 | | | |
| Affidavit Fee: | $ | 8.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    06-22-2018 10:23
City Register File No.(CRFN):
**2018000206952**

*Annette M. Hill*

*City Register Official Signature*



2018062100033001001CBBC3

| **RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)** | **PAGE 2 OF 16** |
|---|---|

**Document ID:** 2018062100033001     Document Date: 05-20-2018     Preparation Date: 06-21-2018
**Document Type:** MORTGAGE AND CONSOLIDATION

**CROSS REFERENCE DATA**
**CRFN:** 2014000421735
**CRFN:** 2014000421736

**Prepared By: Felicia Perry**
Ocwen Loan Servicing, LLC
Attn: HAMP Modifications
P.O. Box 24737
West Palm Beach, FL 33416
Investor #: ███

_____[Space Above This Line for Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

| | |
|---|---|
| Servicer: | Ocwen Loan Servicing, LLC |
| Original Mortgagor / Maker: | MARIE LAMOUR |
| Property/Maker's Address: | 109-41 156TH STREET |
| City: JAMAICA | County: QUEENS     State: NEW YORK |
| Marital Status: | SINGLE |
| Original Mortgagee / Payee: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), SOLELY AS NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION |
| | 570 Sylvan Ave. |
| | Englewood Cliffs, NJ 07632 |
| Original Amount: | $325,615.00 |
| Original Mortgage Date: | SEPTEMBER 17, 2010 |
| Date Recorded: | OCTOBER 29, 2010 |
| Reel / Book: | _____     Page / Liber: _____ |
| CRFN / Document/Instrument #: | 2010000362079 |
| | |
| Present Holder of the Note and Lien: | OCWEN LOAN SERVICING, LLC |
| Holder's Mailing Address: | 5720 Premier Park Dr, |
| (Including county) | West Palm Beach, FL 33407 |
| | Palm Beach County |

New Money      $7,591.22 *Mortgage Tax: $155.62*

LEGAL DESCRIPTION: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Registered Land (OH Only):    ☐ YES     ☐ NO

AFN# (OH Only):      _____

District (NYC Only): _____   Section: 52      Block: 12147      Lot: 5

District (MA Only): _____

Lot (DC Only): _____      Square: _____

*Pre-Mod Unpaid Balance: $273,702.29*
*New Unpaid Balance: $281,293.51*

**"PREMISES IMPROVED OR TO BE iMPROVED BY A 1 OR 2 FAMILY RESIDENCE OR DWELLING ONLY"**

Certificate of Preparation


This is to certify that this instrument was prepared by Ocwen Loan Servicing, LLC, one of the parties named in the instrument.


*Felicia Perry*
Felicia Perry
Authorized Officer


LOSS MITIGATION

Ocwen Loan Servicing LLC
Loss Mitigation Department
5720 Premier Park Dr
West Palm Beach, FL 33407
1-800-850-4622

Loan Number: ████████

Investor Loan Number: ████████

Investor/Owner: Ocwen Loan Servicing, LLC

This document was prepared by Ocwen Loan Servicing, LLC

**After Recording Return To:**
Ocwen Loan Servicing, LLC
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

FHA Case No. ████████

_____ [Space Above This Line For Recording Data] _____

## HOME AFFORDABLE MODIFICATION AGREEMENT

The debtor(s), Marie Lamour

Ocwen Loan Servicing, LLC through the servicer of the underlying mortgage loan agreement, Ocwen Loan Servicing, LLC, have agreed to modify the terms of said underlying mortgage loan agreement. Ocwen Loan Servicing, LLC is the owner of the loan and retains all rights to collect payments as per the underlying mortgage loan agreement. Ocwen Loan Servicing, LLC, remains servicer for said underlying mortgage loan agreement.

Borrower ("I"): Marie Lamour

Lender/Servicer or Agent for Lender/Servicer ("Lender"): Ocwen Loan Servicing, LLC
Investor/Owner: Ocwen Loan Servicing, LLC
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 09/17/2010
Loan Number: ████████

109-41 156th Street

Page 1

Property Address ("Property"):                    Jamaica, NY 11433

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, in the real property records of Queens County, NY. Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 109-41 156th Street, Jamaica, NY 11433, which real property is more particularly described as follows.

**(Legal Description – Attached as Exhibit if Recording Agreement)**

The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations**. I certify, represent to Lender and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

    B. I live in the Property as my principal residence, and the Property has not been condemned.

    C. There has been no change in the ownership of the Property since I signed the Loan Documents.

    D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for a modification of the Loan Documents)

    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct and

    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so and

    G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

    H. If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. Time is of the essence under this Agreement.

    B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and

this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents and

C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 05/01/2018 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 06/01/2018.

A. The new Maturity Date will be: 05/01/2048.

B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Note will be $281,293.51 (the "New Principal Balance"). The "New Principal Balance" may represent the sum of the "Deferred Principal Balance", (if applicable) the "Deferred Principal Reduction" (if applicable) and the "Interest Bearing Principal Balance" which is $281,293.51. I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

Interest at the rate of 4.125% will begin to accrue on the Interest Bearing Principal Balance as of 05/01/2018 and the first new monthly payment on the Interest Bearing Principal will be due on 06/01/2018.

Borrower's payment schedule for the modified Loan is as follows:

| Years | Interest Rate (%) | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|-------------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1 - 30 | 4.125 | 05/01/2018 | $1,363.29 | $591.30 | $1,954.59 | 06/01/2018 | 360 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly. The escrow payment amounts shown are based on current data and represent a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

The above terms in this Section 3. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

C. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

D. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree which was recorded, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. Funds for Escrow Items. I will pay to the Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments the Lender requires to be escrowed. These items are called "Escrow Items". I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its right under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be

permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, any provision in the Note, as amended for the assessment of a penalty for full or partial prepayment of the Note is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in the first lien position and/or is fully enforceable upon modification and that if, under any circumstances and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), then the terms of this Agreement will not become effective on Modification Effective Date and the Agreement will be null and void.

L. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

M. Mortgage Electronic Registration Systems, Inc. (MERS) is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In the cases where the loan has been registered with MERS who has only legal title to the interests granted by the Borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage Loan.

N. In the event of a future default only, Borrower authorizes Lender, and Lender's successors and assigns, to share its contact information with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative. For purposes of this section, Third Parties are limited to HUD-certified housing counseling agencies or state or local government housing finance agencies.

O. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this section 4.N. shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement. This Agreement may not be supplemented, changed, modified or omitted except by written document executed by both me and Ocwen. This Modification constitutes the entire agreement between me and Ocwen and, supersedes all previous negotiations and discussions between me, Ocwen and/or Ocwen's predecessors in interest, and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Agreement.

P. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

## BORROWER ACKNOWLEDGEMENT

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to Ocwen Loan Servicing.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

5/20/18
Date

Marie Lamour
Marie Lamour

**UNIFORM FORM CERTIFICATE OF ACKNOWLEDGEMENT**

State of New York

County of _____NY_____

On the ____20_____ day of ___MAY_____ in the year _2018_, before me, the undersigned, personally appeared __Marie Lamour_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.


*Emmanuel Delacruz*
Notary Public

**EMMANUEL DELACRUZ**
Printed Name


My Commission Expires:

05/09/2019

County of NY

# LENDER ACKNOWLEDGEMENT

### (For Lender's Signature Only)

Lender acknowledges that no representations, agreements or promises were made or any of its representations other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

Ocwen Loan Servicing

*Felicia Perry*

Authorized Officer


**Felicia Perry**    JUN 1 2 2018

_____
Date


State of _____ **Florida** _____

County of _____ **Palm Beach** _____

On this __ day of **JUN 1 2 2018** , before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____ **Felicia Perry** _____ personally known to me or identified to my satisfaction to be the person who executed the within instrument as _____ **Authorized Officer** _____ of Ocwen Loan Servicing, LLC., said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

**GISELE CAZEAU**
Commission # GG 6262
My Commission Expires
June 27, 2020

_____
Notary Public    Gisele Cazeau

My Commission Expires: _____ **JUN 2 7 2020**

OCWEN LOAN SERVICING, LLC

By: Felicia Perry
Authorized Officer
Date: 13-June-2018

WITNESSES:

Desmond Cummings

Tamara Casseus

STATE OF Florida }
COUNTY OF Palm Beach }

On 13-June-2018, before me, the undersigned Notary Public, personally appeared Felicia Perry , Authorized Officer of Ocwen Loan Servicing, LLC, personally known to me to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual(s) or person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the county of Palm Beach, State of Florida.

Witness my hand and official seal.

GISELE CAZEAU
Commission # GG 6262
My Commission Expires
June 27, 2020

Notary – State of Florida
County of Palm Beach
**Gisele Cazeau**

Prepared by:

Felicia Perry

Form No. 3301 (01/08)
Short Form Commitment

# Exhibit "A"

Real property in the **FOURTH WARD** of the Borough of **QUEENS**, County of **QUEENS**, State of **New York,** described as follows:

WHICH UPON A CERTAIN MAP ENTITLED, "MAP OF PHRANER FARM, BELONGING TO BROWN, NORRIS AND HARDENBROOK", AND FILED IN THE OFFICE OF THE CLERK OF THE COUNTY OF QUEENS, IS KNOWN AS AND BY THE LOT NUMBER 17 IN BLOCK NUMBER 10 ON MAP OF SAID PROPERTY, BEING 25 FEET FRONT AND REAR BY 100 FEET DEEP, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF 156TH STREET (BROWN STREET), DISTANT 175.26 FEET FROM THE CORNER FORMED BY THE INTERSECTION OF THE EASTERLY SIDE OF 156TH STREET AND THE NORTHERLY SIDE OF BRINKERHOFF AVENUE (STATE STREET);

RUNNING THENCE NORTHERLY ALONG THE EASTERLY SIDE OF 156TH STREET, 25.04 FEET (25 FEET TAX MAP);

THENCE EASTERLY PARALLEL TO THE NORTHERLY SIDE OF BRINKERHOFF AVENUE, 100.10 FEET;

THENCE SOUTHERLY PARALLEL TO THE EASTERLY SIDE OF 156TH STREET, 25.04 FEET (25 FEET TAX MAP);

THENCE WESTERLY PARALLEL TO THE NORTHERLY SIDE OF BRINKERHOFF AVENUE, 100.10 FEET TO THE EASTERLY SIDE OF 156TH STREET AT THE POINT OR PLACE OF BEGINNING.

Premises described in Schedule "A" are known as:
Address: 109-41 156TH STREET
County: QUEENS
District: N/A
Section: 52
Block: 12147
Lot: 5

APN #: **BLOCK 12147 LOT 5**

# CHAIN OF TITLE

A mortgage to secure an original principal indebtedness of $325,615.00 dated SEPTEMBER 17, 2010 from MARIE LAMOUR to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, A CORPORATION, recorded OCTOBER 29, 2010 as CRFN 2010000362079.

Assigned from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, A CORPORATION to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR OCWEN LOAN SERVICING, LLC by an assignment recorded DECEMBER 23, 2014 as CRFN 2014000421735.

A loan modification agreement to secure a principal indebtedness of $298,564.73 dated AUGUST 01, 2013 from MARIE LAMOUR to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR OCWEN LOAN SERVICING, LLC, recorded DECEMBER 23, 2014 as CRFN 2014000421736.

An assignment is being presented for recording from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR OCWEN LOAN SERVICING, LLC to OCWEN LOAN SERVICING, LLC.



2018062100033001001S77C2

| **SUPPORTING DOCUMENT COVER PAGE** | **PAGE 1 OF 1** |
|---|---|

**Document ID: 2018062100033001**    Document Date: 05-20-2018    Preparation Date: 06-21-2018
Document Type: MORTGAGE AND CONSOLIDATION

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT    1

# Affidavit under Section 255 of the New York State Law

(Modification Agreement)     Loan No. ▮▮▮▮▮▮

State of FL

County of Palm Beach

I, Gisele Cazeau, being duly sworn, depose and say:

1. That he/she is the agent for the owner and holder of the hereinafter-described mortgage, and is familiar with the facts set forth herein.
2. MARIE LAMOUR, as Mortgagor made a certain mortgage bearing date of SEPTEMBER 17, 2010, in the principal amount of $325,615.00 to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, A CORPORATION as original Mortgagee, recorded on OCTOBER 29, 2010, as CRFN 2010000362079, upon which the mortgage tax of $6,644.80 was paid. Assigned from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, A CORPORATION to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR OCWEN LOAN SERVICING, LLC, recorded DECEMBER 23, 2014 as CRFN 2014000421735. MARIE LAMOUR, as Mortgagor made a certain loan modification agreement bearing date of AUGUST 01, 2013, in the principal amount of $298,564.73 to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR OCWEN LOAN SERVICING, LLC as Mortgagee, recorded on DECEMBER 23, 2014 as CRFN 2014000421736, upon which the mortgage tax of $0 was paid. An assignment is being presented for recording from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ("MERS") AS NOMINEE FOR OCWEN LOAN SERVICING, LLC to OCWEN LOAN SERVICING, LLC, in the clerk's office, upon which the mortgage tax will be duly paid thereon.
3. The instrument offered for recording is a Modification made by MARIE LAMOUR to OCWEN LOAN SERVICING, LLC, for $281,293.51 to be recorded in the QUEENS County Clerk's Office.
4. The instrument offered for recording modifies and does not create or secure any new or further lien, indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the recorded mortgage hereinabove first described with the exception of the following amount:

   a) Unpaid principal balance $273,702.29
   b) New unpaid principal balance $281,293.51
   c) B minus A equals $7,591.22
   d) Additional obligation secured be mortgage as modified

Additional mortgage recording tax of $155.62 is therefore being paid on this Modification on the sum set forth in 4c.

That Exemption from further tax is claimed under Section 255 of the Tax Law.

_____
Gisele Cazeau

Sworn before me to this day of:   JUN 1 8 2018

NOTARY PUBLIC (SIGNATURE):  Felicia Perry          Felicia Perry

My Commission Expires:   AUG 0 4 2020

```
FELICIA PERRY
Commission # GG 18706
My Commission Expires
August 04, 2020
```

"PREMISES IMPROVED OR TO BE IMPROVED BY A 1 OR 2
FAMILY RESIDENCE OR DWELLING ONLY"

# NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2021011300959001001E1C5D

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 16 |
|---|---|---|
| **Document ID: 2021011300959001** | Document Date: 09-17-2010 | Preparation Date: 01-13-2021 |

Document Type: MORTGAGE AND CONSOLIDATION
Document Page Count: 15

| PRESENTER: | RETURN TO: |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY<br>3 FIRST AMERICAN WAY<br>SANTA ANA, CA 92707<br>SUPPORT@SIMPLIFILE.COM | FIRST AMERICAN TITLE INS<br>FAMS - DTO RECORDING 3 FIRST AMERICAN WAY<br>SANTA ANA, CA 92707<br>SUPPORT@SIMPLIFILE.COM |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 12147 | 5 | Entire Lot | 109-41 156TH STREET |

Property Type: DWELLING ONLY - 1 FAMILY

## CROSS REFERENCE DATA

CRFN: 2010000362079

## PARTIES

| MORTGAGOR: | MORTGAGEE: |
|---|---|
| MARIE LAMOUR<br>109 -41 156TH ST<br>JAMAICA, NY 11433 | SECRETARY OF HOUSING AND URBAN<br>DEVELOPMENT<br>451 SEVENTH STREET SW<br>WASHINGTON, DC 20410 |

## FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 290,901.65 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 17,376.25 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 356.70 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 356.70 | | | |
| Recording Fee: | $ | 112.00 | | | |
| Affidavit Fee: | $ | 8.00 | | | |

### RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK

Recorded/Filed 01-19-2021 08:58
City Register File No.(CRFN):
**2021000019272**

*Annette M Hill*

*City Register Official Signature*

**Prepared By: Felicia Perry**
PHH Mortgage Services
Attn: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838
Investor #: ▆▆▆

_____[Space Above This Line for Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
# (Step Two of Two-Step Documentation Process)

| | |
|---|---|
| Servicer: | PHH Mortgage Services |
| Original Mortgagor / Maker: | MARIE LAMOUR |
| Marital Status: | SINGLE |
| Original Mortgagee / Payee: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION, ITS SUCCESSORS AND ASSIGNS |

Original Amount:      $     325,615.00
Original Mortgage Date:      SEPTEMBER 17, 2010
Date Recorded:      OCTOBER 29, 2010
Reel / Book:      ----               Page / Liber: ----
CRFN / Document/Instrument #:      2010000362079
AP# / Parcel #:      ----
Property Address:      109-41 156TH STREET
City: JAMAICA      County: QUEENS          State: NEW YORK

Present Holder of the Note and Lien:      PHH MORTGAGE CORPORATION
Holder's Mailing Address:      PO Box 24737
(Including county)      West Palm Beach, FL 33416-9838
     Palm Beach County     *356.70*

New Money      $ *17,376.25*

LEGAL DESCRIPTION: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Registered Land (OH Only):    ☐ YES      ☐ NO
AFN# (OH Only):      _____

District (NYC Only): _____    Section: 52    Block: 12147    Lot: 5

District (MA Only): _____

Lot (DC Only): _____      Square: _____

*On Mod. U.P.B.
273,525.40
New Loan
290,901.65*

*PREMISES IMPROVED OR TO BE IMPROVED FOR 1-2 FAMILY RESIDENCE ONLY*

Certificate of Preparation

This is to certify that this instrument was prepared by PHH Mortgage Corporation, one of the parties named in the instrument.

_Felicia Perry_
Felicia Perry
Authorized Signer

LOSS MITIGATION

PHH Mortgage Corporation
Loss Mitigation Department
5720 Premier Park Dr
West Palm Beach, FL 33407
1-800-850-4622

Loan Number: ███████
Investor Loan Number: ███████
  Investor/Owner: PHH Mortgage Corporation
This document was prepared by PHH Mortgage Corporation

**After Recording Return To:**
PHH Mortgage Corporation
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

FHA Case No. ███████

_____ ' [Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

The debtor(s), MARIE LAMOUR

PHH Mortgage Corporation through the servicer of the underlying mortgage loan agreement, PHH Mortgage Corporation, have agreed to modify the terms of said underlying mortgage loan agreement. PHH Mortgage Corporation is the owner of the loan and retains all rights to collect payments as per the underlying mortgage loan agreement. PHH Mortgage Corporation, remains servicer for said underlying mortgage loan agreement.

Borrower ("I"): MARIE LAMOUR

Lender/Servicer or Agent for Lender/Servicer ("Lender"): PHH Mortgage Corporation
Investor/Owner: PHH Mortgage Corporation
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 09/17/2010
Loan Number: ███████

Property Address ("Property"):          109 -41 156TH ST
                                        JAMAICA, NY 11433

PREMISE IMPROVED OR TO BE IMPROVED FOR 1 or 2 FAMILY RESIDENCE DWELLING ONLY

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") made this 17th day of November, 2020 ("Modification Agreement Date") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, in the real property records of Queens County, NY. Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 109 -41 156TH ST, JAMAICA, NY 11433, which real property is more particularly described as follows.

**(Legal Description – Attached as Exhibit if Recording Agreement)**

The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations**. I certify, represent to Lender and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

    B. I live in the Property as my principal residence, and the Property has not been condemned.

    C. There has been no change in the ownership of the Property since I signed the Loan Documents.

    D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for a modification of the Loan Documents)

    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct and

    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so and

    G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

    H. If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification**. I understand and acknowledge that:

    A. Time is of the essence under this Agreement.

    B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents

will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents and

C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 12/01/2020 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 01/01/2021.

A. The new Maturity Date will be: 12/01/2050.

B. The modified Principal balance of my Note includes amounts and arrearages that are past due as of the Modification Effective Date (including, but not limited to, unpaid and any previously deferred principal and interest, fees, escrow advances and other costs, collectively, "Unpaid Amounts") excluding any fees, costs and/or corporate advances not added to the account as of the Modification Agreement Date and amounts not added to the New Principal Balance due to investor and/or mortgage insurer restrictions less any amounts paid to the Lender but not previously credited to the Loan. Any amounts not added to the New Principal Balance will remain on the account until paid and will become due when the interest-bearing balance is paid in full or upon maturity as applicable pursuant to State or Federal law. The new Principal balance of my Note will be $290,901.65 (the "New Principal Balance"). The "New Principal Balance" may represent the sum of the "Deferred Principal Balance", (if applicable) the "Deferred Principal Reduction" (if applicable) and the "Interest Bearing Principal Balance" which is $290,901.65. I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

Interest at the rate of 3.25% will begin to accrue on the Interest Bearing Principal Balance as of 12/01/2020 and the first new monthly payment on the Interest Bearing Principal will be due on 01/01/2021.

Borrower's payment schedule for the modified Loan is as follows:

| Years | Interest Rate (%) | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|-------------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1 - 30 | 3.25 | 12/01/2020 | $1,266.02 | $586.42 | $1,852.44 | 01/01/2021 | 360 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly. The escrow payment amounts shown are based on current data and represent a reasonable estimate of

expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

The above terms in this Section 3. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

C. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

D. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.

4. **Additional Agreements**. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. Funds for Escrow Items. I will pay to the Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments the Lender requires to be escrowed. These items are called "Escrow Items". I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its right under the

Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibits the exercise of

such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, any provision in the Note, as amended for the assessment of a penalty for full or partial prepayment of the Note is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in the first lien position and/or is fully enforceable upon modification and that if, under any circumstances and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), then the terms of this Agreement will not become effective on Modification Effective Date and the Agreement will be null and void.

L. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

M. Mortgage Electronic Registration Systems, Inc. (MERS) is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In the cases where the loan has been registered with MERS who has only legal title to the interests granted by the Borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage Loan.

N. In the event of a future default only, Borrower authorizes Lender, and Lender's successors and assigns, to share its contact information with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative. For purposes of this section, Third Parties are limited to HUD-certified housing counseling agencies or state or local government housing finance agencies.

O. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender

deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this section 4.N. shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement. This Agreement may not be supplemented, changed, modified or omitted except by written document executed by both me and PHH Mortgage Services. This Modification constitutes the entire agreement between me and PHH Mortgage Services and, supersedes all previous negotiations and discussions between me, PHH Mortgage Services and/or PHH Mortgage Services predecessors in interest, and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Agreement.

P. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

## BORROWER ACKNOWLEDGEMENT

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to PHH Mortgage Corporation.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

11/20 20
Date

MARIE LAMOUR

**UNIFORM FORM CERTIFICATE OF ACKNOWLEDGEMENT**

State of New York

County of _Bronx_

On the _20_ day of _November_ in the year _2020_, before me, the undersigned, personally appeared _Marie Lamour_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_M. Ortiz Peguero_
Notary Public

_Maylen Ortiz Peguero_
Printed Name

MAYLEN AGUSTIN ORTIZ
STATE OF NEW YORK
NOTARY PUBLIC
QUALIFIED IN BRONX COUNTY
01OR6247091
MY COMMISSION EXPIRES 08/22
★

My Commission Expires:

_August 22, 2023_

# LENDER ACKNOWLEDGEMENT

## (For Lender's Signature Only)

Lender acknowledges that no representations, agreements or promises were made or any of its representations other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

PHH Mortgage Corporation

*Felicia Perry*

Authorized Signer

**Felicia Perry** DEC 2 2 2020

Date

State of **Florida**

County of **Palm Beach**

On this __ day of DEC 2 2 2020 _____, before me, the undersigned, a Notary Public in and for said county and state, personally appeared **Felicia Perry** _____ (personally known to me) or identified to my satisfaction to be the person who executed the within instrument as **Authorized Signer** _____ of PHH Mortgage Corporation., said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

Notary Public                **Hubert Paul**

My Commission Expires: _____

HUBERT PAUL
MY COMMISSION # GG 262016
EXPIRES: December 5, 2022
Bonded Thru Notary Public Underwriters

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Fourth Ward of the Borough of Queens, County of Queens, City and State of New York, which upon a certain map entitled, "Map of Phraner Farm, belonging to Brown, Norris and Hardenbrook", and filed in the Office of the Clerk of the County of Queens, is known as and by the Lot Number 17 in Block Number 10 on map of said property, being 25 feet front and rear by 100 feet deep, bounded and described as follows:

BEGINNING at a point on the easterly side of 156th Street (Brown Street), distant 175.26 feet from the corner formed by the intersection of the easterly side of 156th Street and the northerly side of Brinkerhoff Avenue (State Street);

RUNNING THENCE northerly along the easterly side of 156th Street, 25.04 feet (25 feet tax map);

THENCE easterly parallel to the northerly side of Brinkerhoff Avenue, 100.10 feet;

THENCE southerly parallel to the easterly side of 156th Street, 25.04 feet (25 feet tax map);

THENCE westerly parallel to the northerly side of Brinkerhoff Avenue, 100.10 feet to the easterly side of 156th Street at the point or place of BEGINNING.

PHH MORTGAGE CORPORATION

*Felicia Perry*

By: Felicia Perry
Authorized Signer
Date: 22-December-2020

WITNESSES:

Nadia S Cordero

Jorge Marin

STATE OF Florida }
COUNTY OF Palm Beach }

On 22-December-2020, before me, the undersigned Notary Public, personally appeared Felicia Perry, Authorized Signer, of PHH Mortgage Corporation, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, that by her signature on the instrument, the individual(s) or person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the county of Palm Beach, State of Florida.

Witness my hand and official seal.

HUBERT PAUL
MY COMMISSION # GG 282016
EXPIRES: December 5, 2022
Bonded Thru Notary Public Underwriters

Notary —        State of Florida
County of Palm Beach
**Hubert Paul**

**Prepared by:** Felicia Perry

- MARIE LAMOUR as Mortgagor made a certain mortgage bearing the date of 09/17/2010 in the principal amount $ 325,615.00 to Mortgage Electronic Registration Systems, (MERS), solely as nominee for FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION , as original Mortgagee, recorded on 10/29/2010 , in instrument no 2010000362079 ( Taxes pd 6644.80)

- Assigned from Mortgage Electronic Registration Systems, (MERS), solely as nominee for FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION to Mortgage Electronic Registration Systems, (MERS), solely as nominee for Ocwen loan Servicing LLC by assignment recorded, 12/23/2014 in instrument no. 2014000421735, in the clerks' office, upon which the mortgage tax was duly paid thereon.

- Loan Modification Agreement made by MARIE LAMOUR to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. SOLELY AS A NOMINEE FOR OCWEN LOAN SERVICING, LLC dated August 01, 2013 and recorded December 23, 2014 in (as) CITY REGISTER FILE NO. 2014000421736.

  Modified amount is now $298,564.73. NO TAXES PD

- According to public records, the foregoing document was assigned from to Mortgage Electronic Registration Systems, (MERS), solely as nominee for Ocwen loan Servicing LLC by to OCWEN LOAN SERVICING, LLC by assignment recorded June 27, 2018 as CITY REGISTER FILE NO. 2018000212270 of Official Records.

- This instrument is a modification given by Marie Lamour to PHH MORTGAGE CORPORATION AS SUCCESSOR BE TRUSTTE W/ Ocwen Loan Servicing, LLC and to be recorded in the QUEENS County of New York.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2021011300959001001SD2DC

**Document ID: 2021011300959001**    Document Date: 09-17-2010    Preparation Date: 01-13-2021
Document Type: MORTGAGE AND CONSOLIDATION

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT                                    2

# Affidavit under Section 255 of the New York State Law

(Modification Agreement) Loan No. ███████

State of FL

County of PB

I, Diane Bischoff, being duly sworn, depose and say:

1. That he/she is the agent for the owner and holder of the hereinafter-described mortgage and is familiar with the facts set forth herein.
2. MARIE LAMOUR as Mortgagor made a certain mortgage bearing the date of 09/17/2010 in the principal amount $ 325,615.00 to Mortgage Electronic Registration Systems, (MERS), solely as nominee for FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION , as original Mortgagee, recorded on 10/29/2010 , in instrument no 2010000362079 ( Taxes pd 6644.80)   , and assigned  from Mortgage Electronic Registration Systems, (MERS), solely as nominee for  FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION    to  Mortgage Electronic Registration Systems, (MERS), solely as nominee for  Ocwen loan Servicing LLC  by assignment recorded,  12/23/2014  in  instrument no. 2014000421735, in the clerks' office, upon which the mortgage tax was duly paid thereon.

Loan Modification Agreement made by MARIE LAMOUR to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. SOLELY AS A NOMINEE FOR OCWEN LOAN SERVICING, LLC dated August 01, 2013 and recorded December 23, 2014 in (as) CITY REGISTER FILE NO. 2014000421736.

Modified amount is now $298,564.73. NO TAXES PD

According to public records, the foregoing document was assigned from to Mortgage Electronic Registration Systems, (MERS), solely as nominee for Ocwen loan Servicing LLC by  to OCWEN LOAN SERVICING, LLC by assignment recorded June 27, 2018 as CITY REGISTER FILE NO. 2018000212270 of Official Records.

3. This instrument is a modification given by Marie Lamour to PHH MORTGAGE CORPORATION AS SUCCESSOR BE TRUSTTE W/ Ocwen Loan Servicing, LLC   and to be recorded in the QUEENS   County of New York.
4. The instrument offered for recording modifies and does not create or secure any new or further lien, indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the recorded mortgage hereinabove first described except for the following amount:

   a) Unpaid principal balance $273,525.40
   b) New unpaid principal balance $290,901.65

c) B minus A equals $17,376.25
d) Additional obligation secured be mortgage as modified

Additional mortgage recording tax of $356.70    is therefore being paid on this Modification on the sum set forth in 4c.

That Exemption from further tax is claimed under Section 255 of the Tax Law

Name          Diane W. Bischoff

Sworn before me to this day of:

NOTARY PUBLIC  *Felicia Perry*

My Commission Expires:  **Felicia Perry**

FELICIA PERRY
Notary Public - State of Florida
Commission # HH 025372
My Comm. Expires Aug 4, 2024
Bonded through National Notary Assn.